UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Public Employees for
      Environmental Responsibility
2001 S Street, NW, 3rd Floor
Washington, D.C. 20009

Improving Kids' Environment
1201 N. Central Ave., #9
Indianapolis, IN 46202

Project 504
1922 25th Ave. North
Minneapolis, MN 55411                Case No. _____

Maine Lead Action Project
130 Highland St.
Portland, ME 04103

Group 14621 Community Association, Inc.
1171 North Clinton Avenue
Rochester, NY 14621

Organization of the New Eastside
2840 E 10th St.
Indianapolis, IN  46201

Lutheran Metropolitan Ministry
1468 W. 25th St.
Cleveland, OH 44113

The Lead and Environmental
      Hazards Association
P.O. Box 535
Olney, MD 20830

Complaint for Declaratory & Injunctive Relief
Page 1 of 18

Bill Menrath
1750 Longbourne Street
Cincinnati, OH 45230

    Plaintiffs;

    v.

Stephen Johnson
Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

and

U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

    Defendants.

_____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.    This is an action to compel Defendants Stephen Johnson and the U.S. Environmental Protection Agency (EPA) to promulgate regulations to reduce lead-based paint hazards in Renovation and Remodeling activities. Although the Toxic Substances Control Act ("TSCA") required Defendant

to promulgate such regulations by October 28, 1996, 15 U.S.C. § 2682(c)(3), he has not done so.

## JURISDICTION

2.      This action arises under the citizen suit provision of the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2619.  This Court has jurisdiction over this action pursuant to TSCA, 15 U.S.C. § 2619(a), as well as 28 U.S.C. §§ 1331 and 1361, and may issue a declaratory judgment and grant further relief pursuant to 15 U.S.C. § 2619(c)(2) and 28 U.S.C. §§ 2201 and 2202.  Plaintiff has a right to bring this action pursuant to TSCA, 28 U.S.C. § 2619(a)(2) and the Administrative Procedure Act, 5 U.S.C. §§ 701 to 706.

3.      By certified letter posted on July 7, 2005, Plaintiffs PEER, *et al.* gave notice to Defendants, pursuant to TSCA, 15 U.S.C. §2619(b)(2), of the violations alleged herein.  The letter was received and signed for by the Defendant's agent on July 11, 2005.  Thus, more than sixty days have passed since the Defendants have received notice of the violations alleged herein.

## PARTIES

### Plaintiffs

4.     Plaintiff Public Employees for Environmental Responsibility ("PEER") is a nonprofit corporation organized and existing under the law of the District of Columbia.  A national alliance of local, state and federal scientists, law enforcement officers, land managers and other professionals dedicated to upholding environmental laws and values, PEER has members in all fifty states and the District of Columbia.

5.     Plaintiff Project 504 is a housing-related neighborhood non-profit corporation organized and existing under the laws of the state of Minnesota.  Project 504 is based in Minneapolis, MN and works with tenants and communities to improve the housing conditions of people who find they are living in substandard and often unaffordable housing.  Issues of primary concern for Project 504 and its constituents include indoor environmental hazards, such as lead-based paint, radon, and cockroach infestations.

6.     Plaintiff Improving Kids' Environment ("IKE") is a non-profit corporation organized and existing under the laws of the State of Indiana.

IKE is an advocacy coalition that works with citizens, non-profit organizations, governments, and businesses to facilitate tangible and significant improvements to children's health through reductions in environmental threats to children.

7.   Plaintiff Lutheran Metropolitan Ministry ("LMM") is a non-profit corporation organized and existing under the laws of the State of Ohio. LMM works with citizens, congregations, and grassroots organizations in the greater Cleveland area to improve the health of the oppressed, forgotten, and hurting.

8.   Plaintiff Lead and Environmental Hazards Association ("LEHA") is a national trade association focused on lead and other environmental hazards found in residential properties. LEHA's membership includes those involved in the detection and removal of lead-based paint and its associated hazards, which are often found in pre-1978 housing.

9.   Plaintiff Maine Lead Action Project ("MLAP") is a nonprofit organization organized and existing under the laws of the State of Maine. MLAP is a statewide education and advocacy group focused on the

pediatric environmental issues surrounding lead-based paint. Its membership is made up primarily of parents of lead-poisoned children.

10.     Plaintiff Group 14621 Community Association, Inc. ("Group 14621") is a neighborhood advocacy group in Rochester, NY. Group 14621 works with the people residing within the boundaries of the 14621 ZIP code in planning for neighborhood development, identify problems and solutions, and educate community members regarding property codes, ordinances, and zoning requirements.

11.     Plaintiff Organization for a New Eastside ("ONE") is a grassroots organization based in the Eastside neighborhood of Indianapolis, IN. ONE is committed to revitalizing the economically depressed Eastside neighborhood in part by improving the housing conditions of its residents.

12.     Plaintiff Bill Menrath is an Environmental Health professional who lives and works in Cincinnati, Ohio.

13. As is more fully described below, the Defendants' failure to comply with the mandatory duty prescribed by Congress in TSCA has caused Plaintiffs injury for which they have no adequate remedy at law.

## Defendants

14. The U.S. Environmental Protection Agency (EPA) is an agency of the United States.

15. Defendant Stephen Johnson is the Administrator of the EPA, and in that role is charged with the duty to promulgate regulations according to the schedules set out in the Toxic Substances Control Act.

## FACTS

16. The Plaintiffs re-allege the preceding paragraphs and incorporate them herein.

17. Although the United States has made great strides in working towards its goal to eliminate lead-based paint hazards by 2010, it still falls woefully short in some areas—namely, the prevention of childhood lead poisoning.

18.   According to the most recent data from the Centers for Disease Control and Prevention ("CDC"), more than 434,000 pre-school age children are currently suffering from elevated blood lead levels. See, "Surveillance for Elevated Blood Levels Among Children: United States 1997-2001," Centers for Disease Control, September 12, 2003.

19.   "Elevated blood lead levels" are defined by the CDC as greater than 10 µg/dL, and "pre-school age children" are those children between the ages of one and five years. *Id.*

20.   It has not, however, been determined that there is a "safe" level of lead in blood. According to the CDC, "no threshold has been determined regarding lead's harmful effects on children's learning and behavior." *Id.*

21.   The Toxic Control Substances Act was first passed by Congress in 1976 and most recently amended in 1992. The intent of Congress in passing TSCA was to provide, in part, "adequate authority […] to regulate chemical substances and mixtures which present an unreasonable risk of injury to health or the environment, and to take action with respect to chemical substances and mixtures which are imminent hazards." 15 U.S.C. § 2601(b)(2).

22.    Among the substances and mixtures addressed in TSCA are lead and lead-based paint. The 1992 amended version of TSCA sets forth deadlines by which the EPA was to issue rules and regulations regarding lead-based paint and lead-based paint activities, with the ultimate goal of eliminating lead-based paint hazards by 2010. 15 U.S.C. § 2682.

23.    Pursuant to TSCA, the Defendants are required to:

(a) Issue final regulations governing lead-based paint activities by April 28, 1994, to make sure that individuals are properly trained; that training programs are accredited; that contractors engaged in such activities are certified. Lead-based paint activities include abatement, inspection, and risk assessment—they do not include Renovation and Remodeling ("R&R"). 15 U.S.C. § 2682(a)(1).

(b) Issue guidelines for R&R activities by April 28, 1994. 15 U.S.C. § 2682 (c)(1).

(c) Conduct and publish the results of a study of the extent to which people engaged in R&R are exposed to lead (either through the work itself or because they disturb lead and create a lead-based paint hazard) by April 28, 1995. 15 U.S.C. § 2682(c)(2).

(d) Revise the regulations governing lead-based paint activities so that they apply to R&R by October 28, 1996. EPA can determine that a category of contractors engaged in R&R is exempt from the regulations, but must provide an explanation in writing. TSCA, 15 U.S.C. § 2682(c)(3).

24. To date, EPA has not promulgated any regulations regarding R&R activities.

25. In December 2004, EPA stated that it was pursuing a voluntary program for R&R activities. "Lead-based Paint Activities; Abatement Amendments for Renovation and Remodeling," Federal Register, Vol. 69, No. 238, p. 73901. December 13, 2004.

26. In the December 2004 Federal Register notice, EPA did not provide a description of the voluntary program or any specifics regarding funding and implementation.

27. Later, in a May 2005 Federal Register notice, EPA indicated that the voluntary program was "withdrawn." "Lead-based Paint Activities;

Voluntary Program for Renovation and Remodeling," Federal Register, Vol. 70, No. 93, p. 27633, May 16, 2005.

28.   To date, the EPA has not made any formal commitment to pursue rulemaking for Renovation and Remodeling activities, although the deadline for doing so passed over nine years ago.

29.   By certified letter posted on July 7, 2005, Plaintiffs gave notice to the Defendants of the violations alleged herein.  On July 11, 2005, Plaintiffs' notice letter was received and signed for by the Defendants' agent.

## DANGERS AND RISKS ASSOCIATED WITH THE DEFENDANTS' REFUSAL TO REGULATE

30.   The Plaintiffs re-allege the preceding paragraphs and incorporate them herein.

31.   Even as growing scientific evidence documents lead's adverse effects on children's brain development at far lower levels than previously recognized, the Defendants have failed to comply with non-discretionary duties to issue regulations for R&R activities.

32.     The disparities in the burden of this disease make childhood lead poisoning a compelling environmental justice issue: low-income children and children of color are at higher risk than other children.  According to a federal study released in February, 2000, sixteen percent of low-income children living in older housing suffer from lead poisoning, as compared with 4.4% of children nation-wide.  See, "Eliminating Childhood Lead Poisoning: A Federal Strategy Targeting Lead Paint Hazards," Presidents Task Force on Environmental Health Risks and Safety Risks to Children, p. 2, February, 2000.

33.     As the federal strategy to eliminate childhood lead poisoning makes clear, most children who are lead-poisoned have been exposed to lead-based paint and dust hazards in their homes.  According to the Department of Housing and Urban Development's national survey, more than 25 million homes – fully one-quarter of the entire United States' housing stock – have "significant lead hazards."  "Eliminating Childhood Lead Poisoning: A Federal Strategy Targeting Lead Paint Hazards," Presidents

Task Force on Environmental Health Risks and Safety Risks to Children, p. 5, February, 2000.

34.     Experts and practitioners have determined that lead-safe work practices (LSWP) for paint repair and remodeling activities are an integral part of the national lead poisoning prevention equation.

35.     Persons performing work that repairs or disturbs lead-based paint in poorly maintained rental housing properties, including millions of unsubsidized affordable housing units, will not be reached by any voluntary initiative.  They need clear direction and strong incentives to control, contain, and clean up lead dust.  The federal responsibilities include serious capacity building and enforcement, as necessary, to make this a reality.

36.     EPA's own cost-benefit analyses demonstrate that adoption of the Renovation and Remodeling regulations would yield a net economic benefit of at least $2.73 billion per year.  These internal analyses also indicate that

    (a) An estimated 1.4 million children under age 7 residing in some 4.9 million households are at risk of lead exposure due to unsafe repair and renovations; and

    (b) The renovation regulations could be expected to prevent at least 28,000 lead-related illnesses each year, thereby preventing $1.6 billion in medical costs and economic losses annually.

37. Disturbance of surfaces containing lead-based paint and improper clean up cause a myriad of health problems in young children.

38. Lead can harm a child's brain, kidneys, bone marrow, and other body systems. At high levels, lead can cause coma, convulsions, and death.

39. The National Academy of Sciences has reported that comparatively low levels of lead exposure are harmful. Levels as low as 10 micrograms of lead per deciliter of blood (µg/dL) in infants, children, and pregnant

women are associated with impaired cognitive function, behavior difficulties, fetal organ development, and other problems.

40. In addition, low levels of lead in children's blood can cause reduced intelligence, impaired hearing and reduced stature. See, "Eliminating Childhood Lead Poisoning," p. 2. February 2000.

41. Promulgating regulations that require persons involved in renovation and remodeling to exercise proper caution when dealing with lead-painted surfaces, the EPA can make great strides in reducing these health risks.

42. TSCA directs EPA to address renovation and remodeling activities by first conducting a study of the extent to which persons engaged in various types of renovation and remodeling activities are exposed to lead in the conduct of such activities or disturb lead and create a lead-based paint hazard on a regular basis. In addition, TSCA directs EPA to revise the lead-based paint activities regulations to include renovation and

remodeling activities that create lead-based paint hazards.  15 U.S.C. § 2682.

43.	Presently, there is no indication that EPA plans to go forward with the study or issue regulations that will comply with TSCA.  Ignoring the directive to issue regulations and allowing hundreds of thousands of children to suffer from elevated lead-blood levels is an unacceptable approach to an issue that is very important to many people in affected areas.

### PRAYER FOR RELIEF

44.	The Plaintiffs re-allege the preceding paragraphs and incorporate them herein.

45.	Defendants' failure to promulgate regulations for renovation and remodeling activities involving lead-based paint pursuant to 15 U.S.C. § 2682 constitutes a failure of the Defendants to perform a non-discretionary act or duty within the meaning of 15 U.S.C. § 2619 (a)(2).

46. Wherefore, the Plaintiffs request that the Court:

   (a) Declare that the Defendants' failure to promulgate regulations for Renovation and Remodeling activities involving lead-based paint and lead-based paint hazards by the October 28, 1996 deadline specified in TSCA, 15 U.S.C. § 2682(c)(3), constitutes a failure to perform a non-discretionary act or duty within the meaning of 15 U.S.C. § 2619(a).

   (b) Order the Defendants to propose and promulgate, in accordance with expeditious deadlines specified by this Court, and with the input of Plaintiffs, regulations establishing lead-safe work practices for Renovation and Remodeling activities involving lead-based paint and lead-based paint hazards pursuant to 15 U.S.C. § 2682, including, at a minimum, (i) standards for properly working with lead-based paint and lead-based paint hazards; (ii) standards for removing lead-based paint and lead-based paint hazards from residential units; and (iii) standards for testing or sampling to confirm adequate removal of lead-based paint.

(c) Retain jurisdiction of this action to ensure compliance with all relief provided.

(d) Award Plaintiffs all costs associated with this action, including expert fees and attorneys' fees, pursuant to 15 U.S.C. § 2619(c)(2).

(e) Grant such other relief as the Court deems just and appropriate.

Respectfully submitted,


Richard E. Condit, D.C. Bar #417786
General Counsel
Public Employees for Environmental Responsibility
2001 S Street, NW, 3rd Floor
Washington, D.C. 20009
Tel. 202.265.7337

Counsel for Plaintiffs


Dated: December 20, 2005