## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

Public Employees for Environmental Responsibility, *et al.*,

                Plaintiffs,

vs.

Stephen Johnson, Administrator

and

U.S. Environmental Protection Agency,

                Defendants.

NATIONAL ASSOCIATION
OF HOME BUILDERS

                Applicant-Intervenor.

Date:

Judge:  Kollar-Kotelly

Case No: 1:05-cv-02437-CKK

## NATIONAL ASSOCIATION OF HOME BUILDERS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

Thomas C. Jackson
D.C. Bar No. 384708
Raakhee Biswas
D.C. Bar No. [Pending]
Baker Botts L.L.P.
1299 Pennsylvania Ave., NW
Washington, DC  20004-2400
Telephone:    (202) 639-7710
Facsimile:    (202) 585-1009

Attorneys for Applicant-Intervenor
National Association of Home Builders

Mary Lynn Pickel
Director of Legal Services, Advocacy Group
National Association of Home Builders
1201 15th Street, NW
Washington, DC  20005-2800
Telephone:    (202) 266-8485
Facsimile:    (202) 266-8161
              (800) 368-5242, Ext. 8485

Of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

APPLICANT NAHB ........................................................................................................... 3

ARGUMENT ....................................................................................................................... 5

I.    NAHB SATISFIES THE REQUIREMENTS OF RULE 24(a) AND SHOULD BE GRANTED INTERVENTION AS OF RIGHT ............................................................................................................... 5

    A.    NAHB Has Standing to Intervene ........................................................... 7

    B.    NAHB Satisfies the D.C. Circuit's Four-Part Test for Intervention ...... 10

        1.  NAHB's Motion to Intervene is Timely ........................................ 11

        2.  NAHB Has Significant Protectable Interests in this Action .......... 11

        3.  Disposition of this Case May Impair or Impede NAHB's Interests ........................................................................................... 13

        4.  None of the Parties Adequately Represent NAHB's Interests ....... 14

II.   NAHB SATISFIES THE STANDARD FOR PERMISSIVE INTERVENTION ............................................................................................ 15

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Association of Data Processing Serv. Orgs., Inc. v. Camp,*
    397 U.S. 150, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970)........................................................9

*Bennett v. Spear,*
    520 U.S. 154, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997)................................................10

*Cleveland v. NRC,*
    17 F.3d 1515 (D.C. Cir. 1994) ....................................................................................6, 11

*EEOC v. Nat'l Children's Ctr.,*
    146 F.3d 1042 (D.C. Cir. 1998) .........................................................................................15

*Fund for Animals, Inc. v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003) ...................................................................8, 11, 12, 14

*Hunt v. Washington State Apple Advertising Comm'n,*
    432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)......................................................6

*LeBoeuf, Lamb, Greene & Macrae, LLP v. Abraham,*
    205 F.R.D. 13 (D.D.C. 2001)..........................................................................................6, 9

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)..................................................7

*Mausolf v. Babbitt,*
    85 F.3d 1295 (8th Cir. 1996) .............................................................................................15

*Military Toxics Project v. Environmental Protection Agency,*
    146 F.3d 948 (D.C. Cir. 1998)......................................................................................8, 12

*PDK Labs. v. U.S. D.E.A.,*
    362 F.3d 786 (D.C. Cir. 2004) ............................................................................................9

*SEC v. United States Realty & Improvement Co.,*
    310 U.S. 434, 60 S. Ct. 1044, 84 L.Ed. 1293 (1940).......................................................16

*Smoke v. Norton,*
    252 F.3d 468 (D.C. Cir. 2001) ..........................................................................................11

*South Dakota v. Ubbelohde,*
    330 F.3d 1014 (8th Cir. 2003) ...........................................................................................14

*Stupak-Thrall v. Glickman,*
  226 F.3d 467 (6th Cir. 2000) ...................................................15

*U.S. v. A.T. & T.,*
  642 F.2d 1285 (D.C. Cir. 1980) ...............................................11

*Utah Ass'n of Counties v. Clinton,*
  255 F.3d 1246 (10th Cir. 2001) ...............................................15

*Wilderness Soc'y v. Babbitt,*
  104 F. Supp. 2d 10 (D.D.C. 2000) .............................................6

## STATUTES

5 U.S.C. §§ 701-706 ..................................................................1

15 U.S.C. § 2601(c) ................................................................10

15 U.S.C. § 2619(a) .............................................................1, 10

15 U.S.C. § 2619(a)(2) ..............................................................1

15 U.S.C. § 2682(c)(3) ..........................................................1, 10

15 U.S.C. § 2683 .....................................................................4

## RULES & REGULATIONS

Fed. R. Civ. P. 24 ..............................................................1, 6, 17

Fed. R. Civ. P. 24(a) ...........................................................3, 6, 10

Fed. R. Civ. P. 24(b) ................................................................3

Fed. R. Civ. P. 24(b)(2) ........................................................15, 16

## MISCELLANEOUS

63 Fed. Reg. 30302 (1998) ..........................................................4

71 Fed. Reg. 1588 (2006) ........................................................2, 13

Fed. R. Civ. P. 24 Advisory Comm. Notes ........................................6, 16

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 24, the National Association of Home Builders ("NAHB") respectfully requests leave to intervene as of right or, in the alternative, leave for permissive intervention in the above-captioned action. Plaintiffs Public Employees for Environmental Responsibility, Project 504, Improving Kid's Environment, Lutheran Metropolitan Ministry, Lead and Environmental Hazards Association, Maine Lead Action Project, Group 14621 Community Association, Inc., Organization for a New Eastside and Bill Menrath (collectively "Plaintiffs") have filed the above-captioned action to compel Defendant U.S. Environmental Protection Agency ("EPA") to promulgate regulations to reduce lead-based paint hazards that may arise in connection with renovation and remodeling activities in certain housing units and other buildings. Plaintiffs contend that Section 402(c)(3) of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2682(c)(3), required EPA to promulgate such regulations by October 28, 1996. Since EPA did not do so, Plaintiffs now bring this action pursuant to the citizen suit provision of TSCA, 15 U.S.C. § 2619(a)(2), and the Administrative Procedure Act, 5 U.S.C. §§ 701 to 706. See Complaint ¶¶ 1 and 2.

In addition to seeking a declaratory judgment that Defendants' failure to promulgate regulations for renovation and remodeling activities constitutes a failure to perform a non-discretionary act or duty within the meaning of 15 U.S.C. § 2619(a), Plaintiffs also request that the Court order the Defendants to "propose and promulgate . . . *with the input of Plaintiffs*, regulations establishing lead-safe work practices . . .. " See Complaint ¶¶ 46(a) and 46(b) (emphasis added). Therefore, Plaintiffs seek special access to and the opportunity to exert undue influence over EPA's rulemaking to the potential disadvantage of other interested parties not allowed the same opportunity to provide input and guidance to EPA regarding the regulation of

renovation and remodeling activities in residences and other buildings that may contain lead-based paint and the process for adopting any such regulations.

Among the stakeholders who may be most affected if the Plaintiffs are awarded the relief they seek are NAHB and its members. A substantial number of NAHB members are involved in the remodeling industry and so would be directly impacted by any efforts by EPA to regulate or otherwise control the activities of those engaged in renovation and remodeling activities. Given these potential impacts, over the past several years NAHB and its members have expended substantial resources participating with EPA in the development and implementation of regulations and guidance documents issued in compliance with the Residential Lead-Based Paint Hazard Reduction Act of 1992 ("Lead-Based Paint Act")[1] as well as voluntary programs designed to achieve the goals of that Act. Indeed, NAHB has consistently advocated its position that EPA's measures with respect to lead-based paint should be protective of children while being technically feasible and reasonable in light of the costs and benefits of such measures. NAHB has urged EPA to increase its efforts to educate the population regarding lead poisoning in residential and work-place settings.

Most recently, on January 10, 2006 EPA issued proposed regulations to Section 402(c)(3) of TSCA that would address the potential introduction of lead hazards resulting from the disturbance of lead-based paint during renovation, repair and painting activities in most housing built before 1978. *See* 71 Fed. Reg. 1588 (2006). Since that time, NAHB has been preparing to provide written comments to EPA on this proposal; however, Plaintiffs' lawsuit and the relief sought threatens to deny NAHB an equal opportunity to participate in the promulgation of the proposed regulation, even though the regulation would directly impact NAHB's membership.

---

[1] The Lead-Based Paint Act added Section 402 and other related provisions to TSCA.

Therefore, resolution of the suit without NAHB's participation will impair or impede NAHB's ability to protect its interests, which none of the existing parties adequately represents. Because NAHB satisfies the standards for both intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b), this Court should grant NAHB's request to intervene in the above-captioned action.

## APPLICANT NAHB

NAHB is a national trade organization that represents the building industry by serving its members (including remodelors and multi-family property owners and managers) and affiliated state and local builders associations. NAHB has more than 224,000 members encompassing individuals and firms that are involved in home building, remodeling, multifamily construction, property management, subcontracting, design, housing finance, building product manufacturing and other aspects of residential and light commercial construction. *See* Declaration of Mary Lynn Pickel at 2. NAHB's builder members will construct approximately 80 percent of the more than 1.93 million new housing units in the United States projected for 2006. *Id.*

Many NAHB members would be subject to or would otherwise be affected by the rulemaking sought by the Plaintiffs. NAHB has approximately 14,000 members that are involved in the remodeling industry; many of these members are small businesses. *Id.* These members are represented by the NAHB Remodelors Council. Founded in 1982, the Council provides information, education and designation programs to improve the business and construction expertise of its members and to enhance the professional image of the industry. *Id.* "Remodelor™" is the trademarked identifier of NAHB members active in the remodeling industry. The Council's membership incorporates 160 local councils in 43 states. *Id.* These members offer a wealth of expertise on practices in the renovation and remodeling industry and

the practicability of various measures to control exposure to lead in the course of renovation and remodeling activities.

In addition, NAHB represents the interests of market-rate, affordable, and for-sale multifamily developers and owners. Almost 1,000 NAHB members have paid additional dues to join NAHB's Multifamily Council, which is specifically focused on the issues and business interests of apartment and condominium builders, developers, owners, and managers. *Id.* at 2-3. However, almost 9,000 NAHB members, representing 150,000 employees, report that they have a primary, secondary, or tertiary business interest in multifamily housing. *Id.* at 3. Many existing multifamily housing units may be subject to regulations regarding renovation and remodeling because of the potential presence of lead-based paint in these units. Thus, many NAHB members will be directly affected by and subject to any regulation relating to the renovation and remodeling provisions of the Lead-Based Paint Act.

In light of these potential impacts on its members, NAHB has closely followed and participated in EPA's implementation of the Lead-Based Paint Act for a number of years. For example, NAHB submitted comments to EPA in 1998 regarding the Agency's proposed regulations establishing dangerous levels of lead in lead-based paint, lead-contaminated dust and lead-contaminated soil pursuant to Section 403 of TSCA, 15 U.S.C. § 2683. *See* 63 Fed. Reg. 30302 (1998); Pickel Dec. at 3. In November 1999, an NAHB remodelor member was named to and served on the Small Business Advocacy Review Panel convened by EPA in connection with its development of regulations under the Act for renovation and remodeling activities. Pickel Dec. at 4. In 1999 and again in 2001, NAHB submitted comments to EPA on proposed regulations under the Resource Conservation and Recovery Act regarding the management and disposal of lead-based paint debris generated in the course of renovation and remodeling

activities. *Id.* at 3, 4. In addition, over a period of several years NAHB worked with EPA on the development of a voluntary program known as the Lead Safety Partnership, an initiative that was abandoned by the Agency in May 2005 when it elected to focus instead on a regulatory approach to potential lead exposure hazards associated with renovation and remodeling activities in structures with lead-based paint. *Id.* at 4.

In short, NAHB has demonstrated a longstanding interest in the regulation of activities involving lead-based paint, particularly renovation and remodeling activities. Should NAHB be denied the same opportunity as the Plaintiffs to provide input in the rulemaking compelled by Plaintiffs' lawsuit, not only will NAHB's efforts to promote effective and reasonable renovation and remodeling practices to control exposure to lead be frustrated, but NAHB's members will be directly harmed because: (1) Plaintiffs will be allowed disproportionate influence regarding the rulemaking process, thereby denying NAHB members an equal role in the rulemaking despite the fact that it is NAHB members that will be regulated by EPA's rules; (2) such a judicial decree compelling EPA to promulgate rules with one-sided input threatens to yield regulations that, without fairly weighing competing interests and comments from NAHB, are ill-suited to efficiently and effectively ensure safe residential and work-place environments; and ultimately (3) the requested judicial decree effectively would give preference and special access to Plaintiffs to the disadvantage of NAHB in the rulemaking process and will result in increased regulatory burdens for NAHB members.

**ARGUMENT**

## I.     NAHB SATISFIES THE REQUIREMENTS OF RULE 24(a) AND SHOULD BE GRANTED INTERVENTION AS OF RIGHT

NAHB satisfies the requirements of the Federal Rules of Civil Procedure for intervention as of right. Rule 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the Applicant claims an interest relating to the property or transaction which is the subject of the action and the Applicant is so situated that the disposition of the action may as a practical matter impair or impede the Applicant's ability to protect that interest, unless the Applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). Rule 24 is to be construed broadly and liberally in favor of NAHB. *Wilderness Soc'y v. Babbitt,* 104 F. Supp. 2d 10, 11, 18 (D.D.C. 2000). *Accord* Fed. R. Civ. P. 24 Advisory Committee Notes ("if an [applicant] would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . ..")

Several decisions in this Circuit require a proposed intervenor under Rule 24 to also demonstrate that it satisfies the requirements for standing, which derive from the "case or controversy" requirement of Article III of the Constitution. *LeBoeuf, Lamb, Greene & Macrae, LLP v. Abraham,* 205 F.R.D. 13, 18 (D.D.C. 2001); *see also Cleveland v. NRC,* 17 F.3d 1515, 1517 (D.C. Cir. 1994) *(per curiam).* While NAHB believes that the proper standard for intervention as of right for a defendant does not include proof of standing, NAHB easily satisfies the constitutional and prudential standing requirements under Article III of the U.S. Constitution in this case.[2]

---

[2] It is well-established that an organization has standing to sue on behalf of its members if the members would have standing to sue in their own right, the interests in question are germane to the organization's purpose and the participation of the members in the litigation is not required. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). As discussed below, NAHB's members would have standing to sue on their own right, but their participation in the suit is not required because the issues involved are legal in nature and do not require fact-specific determinations with respect to individual NAHB members. Moreover, the interests at issue – the potential impacts on NAHB members of EPA regulations governing renovation and remodeling activities – are certainly germane to NAHB's purposes, which include advocating on behalf of its members on such areas of federal regulation. *See* Pickel Dec. at 3.

### A.    NAHB Has Standing to Intervene

The U.S. Supreme Court has identified three criteria for standing under Article III of the

Constitution:

> (i)    First, there must be an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual and imminent, not 'conjectural or hypothetical'";
>
> (ii)   Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action; and
>
> (iii)  Third, it must be "likely" as opposed to merely "speculative" that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)

(citations omitted).

Each of these criteria is met here.  The Plaintiffs allege that "TSCA directs EPA to revise

the lead-based paint activities regulations to include renovation and remodeling activities that

create lead-based paint hazards."  *See* Complaint ¶ 42 (citing 15 U.S.C. § 2682).  The Plaintiffs

seek an order from the Court requiring EPA to propose and promulgate such regulations.

Complaint ¶ 46.  However, the Complaint goes beyond this to seek an order that EPA be

required to propose and promulgate the regulation with the specific input of the Plaintiffs.  *Id.*  In

essence, the Plaintiffs seek a directive from the Court requiring EPA to allow the Plaintiffs to

have input into the Agency's regulations and rulemaking process, a directive that would not

extend to any other stakeholders.

NAHB and its members will suffer an injury in fact if the Plaintiffs are awarded the relief

they seek and are allowed to have special input into the promulgation of EPA's regulations.  For

example, if NAHB's motion to intervene is denied, the Plaintiffs may exert disproportionate

influence over the rulemaking as a result of settlement negotiations between the Agency and one

set of stakeholders (the Plaintiffs) from which other stakeholders – including the principal representative of the relevant regulated community – are excluded.   The Plaintiffs will undoubtedly seek to impose strict requirements on renovation and remodeling activities that involve lead-based paint, including potentially onerous requirements for training and EPA certification of renovation and remodeling firms, work practice standards and cleaning and testing requirements.   As the entities that would be subject to these requirements, NAHB members would experience a variety of economic injuries associated with compliance with such requirements. *See* Picket Dec. at 5.  *Cf. Military Toxics Project v. Environmental Protection Agency,* 146 F.3d 948, 954 (D.C. Cir. 1998) ("*Military Toxics Project*") (trade association had standing to intervene in challenge to EPA regulations where the association's members were subject to the regulations at issue and would suffer a concrete injury in the form of increased regulatory requirements if the court adopted the plaintiffs' interpretation of statutory requirements). *See also Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 733-34 (D.C. Cir. 2003) ("*Fund for Animals*") (if a party is an object of the action at issue there should be little question that the action has caused him injury).

Moreover, there would be a clear causal connection between the relief sought by the Plaintiffs and the resulting injury to NAHB and its members.  Where Plaintiffs request that the Court order EPA to promulgate these rules with the input of Plaintiffs, *without mention of NAHB or any other interested party,* EPA's rulemaking will be compromised by undue influence and control exerted by Plaintiffs and limited input from other stakeholders.  Any such preferential treatment accorded to the input of the Plaintiffs would diminish the value of the expert views of the regulated NAHB members and threatens to result in EPA overlooking competing interests and viewpoints that would otherwise have been identified, balanced, and fairly incorporated into

the regulations. Such a result would be to the detriment of the regulated community, specifically the remodelors and renovators who are members of NAHB.[3]

Likewise, this imminent harm to NAHB would be adequately redressed if NAHB's motion to intervene is granted. If NAHB is given party status, NAHB will be able to assert its interests in the requested rulemaking on a level playing field with the Plaintiffs, which would in turn ensure that the rulemaking is fair and balanced and takes equal account of the views of all interested stakeholders.

In addition to the constitutional requirements for standing, potential intervenors in the D.C. Circuit generally must demonstrate that they have "prudential" standing. *LeBoeuf*, 205 F.R.D. at 19. The litigant must allege that "the interest sought to be protected is arguably within the zone of interests to be protected *or regulated by* the statute or constitutional guarantee in question." *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970) (emphasis added). The Supreme Court has held and the D.C. Circuit has affirmed that "[i]n deciding whether a litigant has prudential standing . . . [t]he court 'should not inquire' whether Congress intended to benefit or regulate the litigant. It is enough that the litigant's interest is 'arguably' one regulated . . . by the statutory provision at issue.'" *PDK Labs. v. U.S. D.E.A.,* 362 F.3d 786, 791 (D.C. Cir. 2004) (*quoting Nat'l Credit Union Admin. v. First Nat'l Bank,* 522 U.S. 479, 488-89, 492, 118 S. Ct. 927, 140 L. Ed. 2d 1 (1998)).

The prudential standing requirements should not long detain the Court in this case. The citizen's suit provision of TSCA which the Plaintiffs cite as a basis for jurisdiction provides that

---

[3] Moreover, if regulations governing renovation and remodeling activities are not reasonable and balanced, they could adversely impact the very people the Plaintiffs seek to protect. Any costs associated with compliance with renovation and remodeling regulations would likely be passed on to consumers, in this case homeowners seeking to renovate or remodel their homes. If the prices for renovation or remodeling work become too high, some homeowners may opt to undertake certain activities themselves. Since homeowners would not be subject to the regulations promulgated by EPA and may not take any steps to control dust from lead-based paint generated by remodeling activities, such activities by homeowners could actually increase exposure to lead.

"any person" may bring suit to challenge a violation of the statute. 15 U.S.C. § 2619(a). The breadth of this language demonstrates that Congress intended to waive application of the "zone of interest" test in such suits. *See Bennett v. Spear,* 520 U.S. 154, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997) (finding that similar language in the citizen's suit provision of the Endangered Species Act negated the application of the "zone of interest" test). In any event, Congress specified that EPA should consult "persons engaged in renovation and remodeling" in promulgating the regulations sought by the Plaintiffs, 15 U.S.C. § 2682(c)(3), thereby bringing NAHB and its members well within the zone of interests of the statutory provision in question. Moreover, under TSCA the Agency is required to consider the environmental, *economic* and social impacts of any regulations it may adopt. 15 U.S.C. § 2601(c) (emphasis added). This requirement further demonstrates that the economic interests of NAHB and its members are within the zone of interests of Section 402(c)(3) of TSCA.

Thus, NAHB as a representative of its members satisfies the constitutional and prudential requirements of standing for purposes of intervention in this litigation.

**B.    NAHB Satisfies the D.C. Circuit's Four-Part Test For Intervention**

NAHB also satisfies the other requirements for intervention as of right under Rule 24(a). The D.C. Circuit applies a four-part test to determine whether to grant an applicant's motion to intervene as of right:

(i)     The motion for intervention must be timely;

(ii)    The applicant must claim an interest relating to the property or transaction that is the subject of the action;

(iii)   The applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the NAHB's ability to protect that interest; and

(iv)    The applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Fund for Animals,* 322 F. 3d at 731.  As set forth below, NAHB satisfies each of these requirements.

### 1. NAHB's Motion to Intervene is Timely

NAHB has moved to intervene in a timely manner.  The D.C. Circuit determines timeliness "in consideration of all of the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purposes for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001); *see also U.S. v. A.T. & T.,* 642 F.2d 1285, 1295 (D.C. Cir. 1980).

In this case, the suit is at an early stage; the only pleadings filed thus far are the complaint and an answer.  No substantive motions have been filed nor has any briefing occurred.  Because NAHB is filing in the early stages of the proceedings, intervention by NAHB will not delay the proceedings or prejudice the parties, and thus NAHB meets the timeliness requirement.

### 2. NAHB Has Significant Protectable Interests in this Action

NAHB has an interest in the subject of this litigation that is more than sufficient to support intervention as of right.  The D.C. Circuit requires only that an interest be concrete enough to be "legally protectable." *Cleveland v. N.R.C.,* 17 F.3d at 1517, quoting *Donaldson v. U.S.*, 400 U.S. 517, 531, 91 S. Ct. 534, 27 L. Ed. 2d 580 (1971).  Accordingly, the D.C. Circuit and other circuits routinely permit regulated entities to intervene in suits where a plaintiff invokes a citizen-suit provision to challenge federal government action (or inaction), and where the intervenor is subject to the government's action (or inaction).  For example, in *Fund for Animals* the plaintiffs brought suit against the Secretary of the Interior and the Director of the U.S. Fish and Wildlife Service for violating the Endangered Species Act by failing to list argali sheep in Mongolia as endangered, and for allowing sport hunters to import killed specimens of

the sheep into the U.S. as trophies. The Country of Mongolia filed a motion to intervene on the basis that its government was responsible for the implementation of policy and decision-making regarding the country's utilization of national resources, including the country's "tourist hunting program." 322 F.2d at 732. The D.C. Circuit held that Mongolia had a protectable interest sufficient to support standing where the intervenor's members – the citizens of Mongolia – would be affected if the court granted the relief sought by petitioners. Furthermore, the court held that "usually in the review of rulemaking . . . there should be little question that the action or inaction has caused [the applicant-intervenor] injury". *Id.* at 733-34. Therefore, standing in such cases is "self-evident" and "does not require parties to file evidentiary submissions in support." *Id.* The court held that the fact that Mongolia had standing was sufficient to demonstrate that it had an interest in the action that was adequate to satisfy the intervention requirements. *Id.* at 735. *See also Military Toxics Project*, 146 F.3d at 954 (trade association members seeking to intervene in challenge to RCRA regulations by environmental groups would suffer "concrete injury" if court granted relief sought by plaintiffs).

In this case, NAHB has a demonstrated and protectable interest in the subject matter of the litigation. NAHB has been actively involved in member education regarding the requirements of the Act and has worked with EPA to assist in the development and implementation of regulations to comply with the Act. *See* Pickel Dec. at 3. In particular, the renovation and remodeling provisions of the Lead-Based Paint Act are of substantial interest to NAHB because of the significant number of its members that own and manage multifamily properties or are involved in the remodeling industry. In fact, as noted above, in November 1999 one of NAHB's members served on the Small Business Advocacy Review Panel convened by EPA in relation to development of regulations for renovation and remodeling activities. *Id.* at 4.

In more recent years, NAHB has worked with EPA on lead-safety initiatives as they apply to renovation and remodeling activities and has worked with EPA in the development of a voluntary lead-safe work practices program (a program that was ultimately abandoned by EPA in favor of developing a regulatory approach). *Id.* On January 10, 2006 EPA proposed requirements to minimize the introduction of lead hazards resulting from the disturbance of lead-based paint during renovation, repair and painting activities in most housing built before 1978. *See* 71 Fed. Reg. 1588. NAHB has been preparing to provide written comments to EPA on this proposal, *see* Pickel Dec. at 4-5; however, Plaintiffs' lawsuit and relief sought would undermine NAHB's right to participate in the rulemaking on an equal footing with other stakeholders. Where NAHB and its members have invested considerable resources in various efforts with respect to lead safety in renovation and remodeling, *and* where NAHB's members are directly affected by and subject to the regulations, NAHB has a significantly protectable interest in the litigation.

### 3. Disposition of this Case May Impair or Impede NAHB's Interests

The disposition of this action may as a practical matter impair or impede NAHB's ability to protect its interest. As established above, the relief sought by Plaintiffs threatens to impair NAHB's interest in equal access to the formulation of rules that will directly impact its members. Where Plaintiffs' primary legal claim is that EPA failed to promulgate rules regarding lead safety (including rules directly affecting renovators and remodelors who are members of NAHB), NAHB's interests would be impaired in the event that any rules were formulated without its input or with undue access provided to the Plaintiffs. Specifically, among the relief sought by plaintiffs is a request that this Court direct EPA to consult with Plaintiffs in formulating and promulgating its rules. However, any such order for EPA to preferentially consider the input of Plaintiffs would necessarily subordinate and injure NAHB because its members would be subject

to rules made without proper consideration of the expertise and knowledge of all interested parties. Thus, the disposition of this case may significantly impair NAHB's ability to provide EPA with a balanced assessment of competing interests relevant to its rulemaking and may impede NAHB's interest in the fair development of rules ultimately applied to its members.

### 4. None of the Parties Adequately Represent NAHB's Interests

NAHB must also meet the minimal burden of showing that representation of its interests by the other parties to the litigation may be inadequate. *See Fund for Animals,* 322 F.3d 731 at 735, quoting *Tribovich v. United Mine Workers of America,* 404 U.S. 528, 538 n.10 (1972) (holding that the 'adequate representation' requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal"). This minimal burden is easily met.

The Plaintiffs can hardly be said to represent NAHB's interests. The Plaintiffs generally represent residents of housing units and their primary focus is housing conditions and the health of residents. They do not purport to represent the interests of those who would be subject to the regulations they seek. In contrast, NAHB principally represents companies and individuals who provide renovation and remodeling services to homeowners and who would therefore be subject to the regulations sought by the Plaintiffs. NAHB recognizes and supports the need to protect residents from significant exposures to lead but at the same time advocates the adoption of protective measures that are reasonable and feasible for its many small-business members. The Plaintiffs certainly do not purport to represent the interests of these members.

Likewise, the government cannot be expected to adequately represent the applicant because of the government's responsibility to the body politic. *Fund for Animals,* 322 F.3d at 736; *South Dakota v. Ubbelohde,* 330 F.3d 1014, 1025 (8th Cir. 2003) ("the government must represent the interests of all of its citizens, which often requires the government to weigh

competing interests and favor one interest over another"); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001) ("the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation"); *Stupak-Thrall v. Glickman*, 226 F.3d 467, 479 (6th Cir. 2000) (rejecting the argument that when the government is a party to a lawsuit it is presumed to represent the interests of all citizens); *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996) ("when the proposed interveners' concern is not a matter of 'sovereign interest,' there is no reason to think the government will represent it"). Moreover, in this case, NAHB is in a superior position vis-à-vis the federal government to specify the economic impact of regulations directing NAHB's members in their roles as renovators and remodelors of lead-contaminated properties. As a result, NAHB's interests are not adequately represented by any of the parties to the litigation and NAHB's motion to intervene should therefore be granted.

## II.    NAHB SATISFIES THE STANDARD FOR PERMISSIVE INTERVENTION

If this Court denies NAHB's motion to intervene as of right in whole or in part, the Court should grant NAHB permission to intervene pursuant to Rule 24(b)(2). That rule provides in pertinent part that:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)(2). These requirements "are to be construed liberally with all doubts resolved in favor of permitting intervention." *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Moreover, Rule 24(b)(2) "plainly dispenses with any requirement that

the intervener shall have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 459, 60 S. Ct. 1044, 84 L. Ed. 1293 (1940).

Here NAHB seeks to participate in litigation seeking to require EPA to engage in a rulemaking that would affect thousands of NAHB's members. Moreover, the Plaintiffs seek an order specifically requiring that they be allowed to have input into the proposal and promulgation of the regulations. NAHB's interest in ensuring a level playing field for any such rulemaking clearly creates common questions with the main action. Thus, NAHB satisfies the literal requirement of Rule 24(b)(2) respecting a common question of law or fact. Furthermore, because NAHB is seeking to intervene at the outset of the case prior to the filing of any substantive motion or brief, no credible argument can be made that granting intervention will result in undue delay. Therefore, NAHB meets the requirements of Rule 24(b)(2).

Additional considerations also weigh in favor of allowing NAHB's intervention in this case. Because NAHB has an interest in the effect of that rule on its members, and because NAHB has extensively participated over a sustained period of time in previous rulemaking processes concerning lead safety in renovation and remodeling, permitting NAHB to intervene would further the goals of the Plaintiffs, EPA and Congress in producing effective rules on this issue. Moreover, to promote judicial economy, it is appropriate to permit intervention by NAHB where NAHB has demonstrated an on-going interest in lead-based paint renovation and remodeling activities, programs and regulations. Fed. R. Civ. P. 24 Advisory Committee Notes ("If an [applicant] would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . .."). Barring participation by NAHB will increase the likelihood of independent legal action by NAHB that will undermine

judicial economy. Such a result would be to the detriment of the interests of the public, Plaintiffs, EPA and NAHB's membership, and accordingly, NAHB should be permitted to intervene in the pending litigation.

### CONCLUSION

For the reasons set forth above and in light of the fact that Rule 24 is construed liberally in favor of potential intervenors, NAHB respectfully requests that this Court grant its motion to intervene as of right or, in the alternative, for permissive intervention.

Dated:   April __7__, 2006

_Thomas C. Jackson_
Thomas C. Jackson
D.C. Bar No. 384708
Raakhee Biswas
D.C. Bar No. [pending]
Baker Botts LLP
1299 Pennsylvania Ave. NW
Washington, DC 20004-2400
Telephone:    (202) 639-7710
Facsimile:    (202) 585-1009

Attorneys for Applicant-Intervenor
National Association of Home Builders


Mary Lynn Pickel
Director of Legal Services, Advocacy Group
National Association of Home Builders
1201  15th Street, NW
Washington, DC  20005-2800
Telephone:    (202) 266-8485
Facsimile:    (202) 266-8161

Of Counsel
