IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, et al., )<br>)<br>)<br>) | |
| )<br>Plaintiffs, ) | |
| )<br>v. )<br>) | No. 05-cv-02437 (CKK) |
| STEPHEN JOHNSON, )<br>Administrator, United States Environmental )<br>Protection Agency, )<br>)<br>) | |
| Defendants. )<br>) | |

**EPA'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
FOR LACK OF SUBJECT MATTER JURISDICTION**

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

A.    The statute of limitations operates as a limitation on the waiver of sovereign
       immunity in this case, and must be strictly construed . . . . . . . . . . . . . . . . . . . . . . . .  4

B.    PEER failed to file its complaint within six years of the accrual of its cause of
       action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

C.    Equitable principles cannot extend the time for PEER to file its claim . . . . . . . . . . . . .  7

D.    The same principles that bar equitable tolling also bar the use of the continuing
       violations doctrine in claims to compel regulatory action . . . . . . . . . . . . . . . . . . . . . . . 10

E.    The D.C. Circuit has not previously ruled on the question presented in this Motion . . . 13

       1.    The D.C. Circuit's statement in *Wilderness Society* was non-binding *dicta* . . . . 14

       2.    *Wilderness Society* discussed the application of § 2401 to a different cause
              of action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       3.    The D.C. Circuit's reasoning in *Wilderness Society* was incorrect and should
              not carry over into a non-APA context . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Biodiversity Legal Found. v. Norton,*
    285 F. Supp. 2d 1 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Center for Biological Diversity v. Hamilton,*
    453 F. 3d 1331 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 13

*Chung v. Department of Justice,*
    333 F.3d 273 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 10, 11

*Citizen Elec. Co. v. Osram GmbH,*
    377 F. Supp. 2d 149 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Department of the Army v. Blue Fox, Inc.,*
    525 U.S. 255 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Felter v. Norton,*
    412 F. Supp. 2d 118 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 10, 11

*Impro Prods., Inc. v. Block,*
    722 F.2d 845 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In Re American Rivers & Idaho Rivers United,*
    372 F.3d 413 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Barr Labs.,*
    930 F.2d 72 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

*In re Bluewater Network,*
    234 F.3d 1305 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re United Mine Workers,*
    190 F.3d 545 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Irwin v. Department of Veterans Affairs,*
    498 U.S. 89 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10, 11, 12

*Kalodner v. Abraham,*
    310 F.3d 767 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Keith v. Duffy,*
    77 F. Supp. 2d 46 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Klehr v. A.O. Smith Co.,*
    521 U.S. 179 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lane v. Pena,*
    518 U.S. 187 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Liberty Fund, Inc. v. Chao,*
    394 F. Supp. 2d 105 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*LoBue v. Christopher,*
    82 F.3d 1081 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17

*New York Public Interest Research Group v. Whitman,*
    214 F. Supp. 2d. 1 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Norwest Bank Minnesota Nat'l Ass'n v. FDIC,*
    312 F.3d 447 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sierra Club v. Thomas,*
    828 F.2d 783 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Simms v. United States Gov't Printing Office,*
    87 F. Supp. 2d 7 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Spannaus v. Department of Justice,*
    824 F.2d 52 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 17

*Telecommunications Research & Action Center v. FCC,*
    750 F.2d 70 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Totten v. Norton,*
    421 F. Supp. 2d 115 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Trudeau v. FTC,*
    No. 05-5363, 2006 WL 2087122 (D.C. Cir. July 28, 2006) . . . . . . . . . . . . . . . . . . . 1, 17

*United States v. Brockamp,*
    519 U.S. 347 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Mitchell,*
    463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Mottaz,*
    476 U.S. 834 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Torres,*
    115 F.3d 1033 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wilderness Society v. Norton,*
    No. 03-cv-64 (RMC), 2005 WL 3294006 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . 9, 13

*Wilderness Society v. Norton,*
    434 F.3d 584 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 16, 18, 19


**FEDERAL STATUTES**

5 U.S.C. § 552a(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. § 2619 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 16, 19

15 U.S.C. § 2619(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

15 U.S.C. § 2619(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

15 U.S.C. § 2619(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 2619(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C. § 2682 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

15 U.S.C. § 2682(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. § 2682(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. § 2682(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

15 U.S.C. § 2682(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C. § 2682(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C. § 2682(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

16 U.S.C. § 1131 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16 U.S.C. § 1533(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

16 U.S.C. § 1540(g)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 5, 12, 13, 14, 17, 18

**FEDERAL RULES OF CIVIL PROCEUDRE**

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**CODE OF FEDERAL REGULATIONS**

40 C.F.R. § 745.220-239 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**FEDERAL REGISTER**

Lead; Renovation, Repair and Painting Program, 71 Fed. Reg. 1588 (Jan. 10, 2006) . . . . . . . . 2

**ELECTRONIC DATABASE**

www.epa.gov/oppt/pubs/rrpamph.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendant United States Environmental Protection Agency ("EPA") hereby moves for dismissal of the Complaint in this litigation on the grounds that the Court does not have jurisdiction over the subject matter. In its complaint, Public Employees for Environmental Responsibility (with a coalition of other plaintiffs, collectively "PEER"), alleges a violation of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2682(c)(3), that occurred more than six years before the complaint was filed. As a result, the claim is time-barred by the applicable statute of limitations, 28 U.S.C. § 2401(a). The limitations period of § 2401 is a condition on the United States' waiver of sovereign immunity, and such waivers must be construed narrowly, thereby precluding the application of equitable doctrines that might otherwise be available to toll or extend the limitation period. The Court is therefore without jurisdiction over the cause of action, and the complaint must be dismissed.[1/]

## STATEMENT OF FACTS

PEER's cause of action is based on 15 U.S.C. § 2682, a provision of TSCA. In § 2682, Congress instructed the Administrator of EPA to promulgate regulations concerning training and certification for contractors conducting "lead-based paint activities." 15 U.S.C. § 2682(a), (b). Regulations pursuant to this section are now codified at 40 C.F.R. § 745.220-239. Congress separately instructed EPA, through the Administrator, to establish "guidelines" for "renovation

---

[1/]Although EPA did not raise a statute of limitations defense in its Answer, that defense is not waived because it raises the question of this Court's jurisdiction over the case. Jurisdictional questions may be raised at any time, and must be resolved even when they are not raised by the parties. *See, e.g., Trudeau v. FTC,* No. 05-5363, 2006 WL 2087122, *3 (D.C. Cir. July 28, 2006) (citing *LoBue v. Christopher,* 82 F.3d 1081, 1082 (D.C. Cir. 1996)).

and remodeling" activities in certain buildings by April 28, 1994, and to conduct further study of the extent to which such activities created a "lead-based paint hazard" in those buildings by April 28, 1995. *Id.* § 2682(c)(1), (2). These steps are now completed.[2]

Finally, Congress instructed EPA to revise the regulations promulgated under § 2682(a), which govern contractors who conduct "lead-based paint activities," to apply them to "renovation or remodeling activities," occurring within designated structures, that "create lead-based paint hazards." *Id.* § 2682(c)(3). According to the statute, this revision was to be accomplished by October 28, 1996. *Id.* EPA has issued a proposed rule under the authority of § 2682(c)(3). *See* Lead; Renovation, Repair and Painting Program, 71 Fed. Reg. 1588 (Jan. 10, 2006).

On December 20, 2005, PEER sued EPA under 15 U.S.C. § 2619, a provision of TSCA that governs citizens' suits. Among other things, § 2619 provides that, upon 60 days' notice to the Administrator, "any person may commence a civil action . . . against the Administrator to compel the Administrator to perform any act or duty under this chapter which is not discretionary." 15 U.S.C. § 2619(a)(2), (b)(2). TSCA does not specify a statute of limitations for actions under § 2619.

In its complaint, PEER alleges that under § 2682(c)(3), EPA (through the Administrator) had a nondiscretionary duty to promulgate regulations for renovation and remodeling activities by October 28, 1996. Compl. ¶ 46(a). PEER alleges that EPA has not fulfilled that duty. *Id.* ¶

---

[2]EPA's guidance pursuant to 15 U.S.C. § 2682(c)(1) was issued as a publication called "Reducing Lead Hazards When Remodeling Your Home," currently available at *www.epa.gov/ oppt/lead/pubs/rrpamph.pdf.* The results of the § 2682(c)(2) study are described in the preamble to a rule proposed under § 2682(c)(3) that addresses lead-based paint hazards associated with renovation and remodeling activities in "target housing." *See* Lead; Renovation, Repair and Painting Program, 71 Fed. Reg. 1588 (Jan. 10, 2006).

24.  As relief, PEER requests an order requiring EPA to promulgate, "with the input of

Plaintiffs" and "in accordance with expeditious deadlines," the regulations described in § 2682.

*Id.* ¶ 46.[3]

**STANDARD OF REVIEW**

On this motion to dismiss under Rule 12(b)(1), the plaintiffs bear the burden of

demonstrating by a preponderance of the evidence that the predicates for jurisdiction are met.

*Totten v. Norton*, 421 F. Supp. 2d 115, 121-22 (D.D.C. 2006); *Citizen Elec. Co. v. Osram GmbH*,

377 F. Supp. 2d 149, 152 (D.D.C. 2005).  The Court must accept the allegations of the complaint

as true, but those allegations must bear closer scrutiny on a motion under Rule 12(b)(1) than on a

motion under Rule 12(b)(6), so that the Court may ensure that jurisdiction exists.  *See, e.g.*,

*Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 112-13 (D.D.C. 2005).

**ARGUMENT**

The citizen suit provision of TSCA on which PEER relies, 15 U.S.C. § 2619(a), is a

limited waiver of the United States' sovereign immunity from suit over the Administrator's

failure to perform a nondiscretionary duty.  Because that provision does not specify a limitations

period, the applicable statute of limitations is 28 U.S.C. § 2401(a), which requires that actions

against the United States be brought within six years of the date that the cause of action accrued.

This is a limit on the Court's jurisdiction: The waiver of sovereign immunity lasts for six years,

---

[3]  The National Association of Home Builders ("NAHB") intervened as a defendant in this
litigation, seeking the denial of the relief requested in PEER's Complaint.  NAHB stated that its
interest in the litigation, which would not be adequately represented by any party, is based on
PEER's request that the allegedly required rules be fashioned "with the input of Plaintiffs."
NAHB claims that this would "deny NAHB an equal opportunity to participate in the
promulgation of the proposed regulation."  NAHB Mot. to Intervene at 2.  This asserted interest
is not affected by this Motion.

and beyond that period, the United States is immune from suit.

PEER's Complaint alleges a cause of action that accrued on October 29, 1996 – the first day beyond the statutory deadline that PEER alleges EPA missed for the promulgation of regulations. PEER failed to file a complaint concerning this alleged violation for more than nine years after that date. As a result, PEER's complaint is untimely under the applicable statute of limitations, 28 U.S.C. § 2401(a), and must be dismissed.

**A.     The statute of limitations operates as a limitation on the waiver of sovereign immunity in this case, and must be strictly construed.**

The existence of a waiver of its sovereign immunity from suit is a prerequisite in any claim against the United States. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The Court must address the jurisdictional question before reaching the merits. *See Kalodner v. Abraham*, 310 F.3d 767, 769 (D.C. Cir. 2003).

Because consent to be sued is a jurisdictional prerequisite, and because Congress has the power to set the bounds of that consent, such bounds limit the Court's jurisdiction. *United States v. Mottaz*, 476 U.S. 834, 841 (1986); *Felter v. Norton*, 412 F. Supp. 2d 118, 122 (D.D.C. 2006). The statute of limitations is one of those bounds, and the expiration of the statute of limitations is a bar to the Court's subject matter jurisdiction. *Mottaz*, 476 U.S. at 841.

In this instance, the waiver of sovereign immunity is created by 15 U.S.C. § 2619(a)(2), the citizen suit provision of TSCA under which PEER has brought its action. TSCA does not specify the statute of limitations that applies to § 2619, so the applicable limitations period is the general six-year period provided in 28 U.S.C. § 2401(a). *See Norwest Bank Minnesota Nat'l*

-4-

*Ass'n v. FDIC*, 312 F.3d 447, 450-51 (D.C. Cir. 2002). That statute is unequivocal: "[E]very

civil action against the United States shall be barred unless the complaint is filed within six years

after the right of action first accrues." Because this is a condition of the United States' waiver of

sovereign immunity, it must be construed narrowly and in favor of the sovereign. *See, e.g.*,

*Spannaus v. Department of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987); *id.* at 60 ("§ 2401(a) is

more than an ordinary statute of limitations; it is a condition on the waiver of sovereign

immunity, and we are obliged to construe such waivers strictly"). *See also Lane v. Pena*, 518

U.S. 187, 192 (1996) (noting that the Court must construe ambiguities in favor of immunity). A

plaintiff seeking relief has the burden to demonstrate a waiver that is "unequivocally expressed"

in the statutory text. *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); *Irwin

v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990).[4]

## B.    PEER failed to file its complaint within six years of the accrual of its cause of action.

The waiver of sovereign immunity in TSCA, combined with the applicable statute of

limitations in 28 U.S.C. § 2401(a), created a period of six years for PEER to file a complaint,

starting from the date its cause of action first accrued.

For purposes of § 2401(a), a cause of action "first accrues" as soon as the person

challenging the agency action can "institute and maintain a suit in court." *Spannaus*, 824 F.2d at

56. In the case of this nondiscretionary duty suit under § 2682(c)(3), the cause of action accrued

on October 29, 1996: the day after the statutory deadline that PEER identifies as the basis for this

litigation. The only elements necessary to PEER's suit are (a) that EPA had a duty to promulgate

---

[4]One exception to this rule is stated in *Irwin*, 498 U.S. at 95-96, in which the Supreme Court
recognized that the statute of limitations may be broadened beyond its unequivocal text in limited
circumstances (not present here), consistent with congressional intent. *See infra* pp. 7-8.

certain regulations by October 28, 1996; and (b) that EPA did not promulgate the necessary

regulations by that date. The facts necessary to support both of these allegations were fully

available to PEER as of October 29, 1996. PEER's complaint, filed in December 2005, alleges

that the deadline for EPA to promulgate regulations "passed over nine years ago," Compl. ¶ 28,

and PEER could have fully alleged the necessary elements of its claim at that time. *See Center

for Biological Diversity v. Hamilton*, 453 F. 3d 1331, 1335 (11th Cir. 2006) (holding that a

deadline in the Endangered Species Act creates a cause of action "that accrues on the day

following the deadline," and that this is a "fixed point in time at which the violation for the

failure of the Secretary to act arises"). *See also In re Barr Labs.*, 930 F.2d 72, 74 (D.C. Cir.

1991) (holding that failure to meet a mandatory statutory deadline is unlawful, even if other

factors make mandamus relief inappropriate at that time).

Another way to confirm that PEER's cause of action accrued on October 29, 1996 is to

apply the more specific rule that "[i]n the agency context . . . the cause of action accrues when all

statutorily required or permitted agency review has been exhausted." *Impro Prods., Inc. v. Block*,

722 F.2d 845, 850 (D.C. Cir. 1983). Under the TSCA citizen suit provision, no such agency

review is required: Once the separate statutory requirement of 60 days' notice to EPA has been

met, "any person may commence a civil action." 15 U.S.C. § 2619(a).

Because PEER's cause of action first accrued on October 29, 1996, PEER was required to

bring its claim by October 28, 2002. The United States waived its sovereign immunity from suits

such as PEER's for six years following the first accrual of the action, and no more. "Six years is

a long time, ample time within which to pursue an administrative appeal to completion or, in

instances of agency delay, to invoke the aid of the court." *Spannaus*, 824 F.2d at 56. In this

-6-

instance, the remedy that Congress provided for EPA's alleged failure to fulfill its regulatory

duty was to permit any person to "invoke the aid of the court" at any time between October 29,

1996 and October 28, 2002. However, in that "ample time," PEER did nothing. Its complaint on

December 20, 2005 was more than three years too late. As a result, its complaint is beyond the

period for which sovereign immunity was waived, and the Court is without jurisdiction to

consider its claim.

**C.    Equitable principles cannot extend the time for PEER to file its claim.**

In a claim between private parties, a number of equitable doctrines may extend the statute

of limitations, extending the time for a party to file a complaint on a particular claim. *Irwin*, 498

U.S. at 95.[5]/ Because § 2401 is a limitation on the waiver of sovereign immunity that must be

strictly construed, many courts prior to 1990 had held that equitable principles therefore could

not apply to extend the limitations period for actions against the United States beyond the six

years specified in that statute. *See Chung v. Department of Justice*, 333 F.3d 273, 276 (D.C. Cir.

2003) (citing *Soriano v. United States*, 352 U.S. 270, 276 (1957)).

This rule was modified by the Supreme Court in *Irwin v. Department of Veterans Affairs*,

in which the Court considered whether the strict construction of the congressional waiver of

sovereign immunity expressed in a statute of limitations necessarily required the exclusion of

equitable principles. The Court reasoned that "making the rule of equitable tolling applicable to

suits against the Government, *in the same way that it is applicable to private suits*, amounts to

---

[5]/The list of "judicially recognized exceptions" to the statute of limitations that are encompassed within the term "equitable principles," as used in this Motion, includes: "waiver, estoppel, equitable tolling, fraudulent concealment, the discovery rule, and the continuing violations doctrine." *Felter*, 412 F. Supp. 2d at 122 (citations omitted).

little, if any, broadening of the congressional waiver." 498 U.S. at 95 (emphasis added). Thus, although equitable arguments do not normally expand the Court's jurisdiction under a waiver of sovereign immunity, the Court held that the waiver could incorporate equitable principles if those principles would also be "applicable to suits against private defendants." *Id.* However, the Court warned that "no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants." *Id.* at 96; *see also United States v. Brockamp*, 519 U.S. 347, 349-51 (1997).

Subsequent decisions have clarified the class of cases to which the rule of *Irwin* applies. In *Chung v. U.S. Department of Justice*, the D.C. Circuit applied the rule in *Irwin* to a claim for money damages against the United States for an alleged violation of the Privacy Act, 5 U.S.C. § 552a(b). The court held that equitable tolling would apply to extend the Privacy Act's waiver of sovereign immunity for suits against the United States, even though the Privacy Act does not create an analogous cause of action against private parties. Congress "expected the Government to face equitable tolling in litigation because equitable tolling is a traditional feature of the procedural landscape," and an action "to recover damages caused by the Government's unwarranted disclosure of personal information" fits that traditional litigation paradigm. *Chung*, 333 F.3d at 276-77. The court distinguished such causes of action from litigation that is "so peculiarly governmental that there is no basis for assuming customary ground rules apply." *Id.* at 277. As an example, the court noted that "a petition for review of an informal agency rulemaking would not likely meet the test" that determines when equitable principles are permitted. *Id.*

The only reason that this Court could permit PEER's lawsuit, filed more than six years

-8-

after the cause of action first accrued, would therefore be that PEER's claim is similar to a claim that could be brought against a private party. Yet the claim that a federal agency has failed to fulfill the rulemaking duties set out in 15 U.S.C. § 2682(c), and a prayer for relief seeking an order that the agency promulgate regulations, cannot possibly meet this test. PEER has sought to compel the performance of a purely governmental function: the promulgation of regulations, binding on the public, to implement the laws of Congress. Like a "petition for review of an informal agency action," a claim that an agency of the United States has failed to perform nondiscretionary rulemaking is "so peculiarly governmental that there is no basis for assuming customary ground rules apply." *Chung*, 333 F.3d at 276.[9] The waiver of sovereign immunity in 15 U.S.C. § 2619(b) therefore existed in this case only for an action filed within six years of the date the cause of action first accrued – October 29, 1996. PEER cannot use any equitable excuse to extend this Court's jurisdiction over its complaint until December 20, 2005, more than nine years after the cause of action first accrued.

If the Court should conclude, contrary to the D.C. Circuit's suggestion in *Chung*, that an action to compel performance of a nondiscretionary regulatory duty is susceptible to equitable tolling of the statute of limitations, then PEER still has not alleged facts in its complaint that would entitle it to equitable tolling. This point is demonstrated by PEER's general failure to

---

[9] Elaborating on this test, this Court has stated that equitable principles will not extend the limitations period where the agency activities at issue "are themselves – or would be, if completed – part of the overarching legislative process. The working relationship between the Executive and the Legislative Branches envisioned by these laws cannot be found outside the sphere of government." *Wilderness Society v. Norton*, 2005 WL 3294006, *6 (D.D.C. 2005), *aff'd on other grounds*, 434 F.3d 584 (D.C. Cir. 2006). The Court's ultimate holding on this point was called into question on appeal (*see infra* pp. 13-15), but the Court's analysis to determine whether agency action is "peculiarly governmental" was sound.

pursue its claim during the first nine years after its cause of action first accrued. Equitable principles that extend the statute of limitations are applied "only sparingly," for example, "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96. Equitable tolling may also apply when "the plaintiff despite all due diligence is unable to obtain vital information bearing on the existence of his claim," or when "a plaintiff knows he has been injured, but is unaware that his injury may be the result of possible misconduct by the defendant." *Chung*, 333 F.3d at 278-79. None of these situations applies here, according to PEER's complaint. To the contrary, PEER knew or was able to learn of EPA's alleged failure to regulate immediately upon the passage of the statutory deadline in 1996. Equitable tolling will not apply "where the claimant failed to exercise due diligence in preserving his legal rights," *Irwin*, 498 U.S. at 96, and that is certainly the case here. *See also Felter*, 412 F. Supp. 2d at 126 (refusing to apply equitable tolling because "[p]laintiffs have not presented any reason clarifying why they could not have filed this claim earlier.").

**D.    The same principles that bar equitable tolling also bar the use of the continuing violations doctrine in claims to compel regulatory action.**

PEER may also argue that EPA's alleged failure to meet its statutory deadline to regulate is a "continuing violation" that may bring its cause of action within the Court's jurisdiction even if the conduct giving rise to that cause of action began outside the limitations period. The continuing violations doctrine allows a court to consider an entire course of related conduct, where some wrongful acts occurred within the statute of limitations period and others occurred outside it. *See, e.g., Felter*, 412 F. Supp. 2d at 125. However, this doctrine faces the same obstacle as the equitable tolling argument, when applied against EPA: A strict construction of

the waiver of sovereign immunity in § 2401 will not allow the extension of the limitations period beyond the six years specified in the statute.

Although *Irwin* and *Chung* did not themselves discuss continuing violations, their logic should extend to the continuing violation doctrine. Those cases barred the application of equitable tolling not based on any feature peculiar to equitable tolling itself, but rather on the principle that Congress intended the six-year waiver of sovereign immunity to be extended only in those cases "whether the injury to be redressed is of a type familiar to private litigation." *Chung*, 333 F.3d at 277. Like equitable tolling, this Court has considered the continuing violation doctrine to be an equitable doctrine. *See Felter*, 412 F. Supp. 2d at 122; *Simms v. United States Gov't Printing Office*, 87 F. Supp. 2d 7, 9 (D.D.C. 2000); *Keith v. Duffy*, 77 F. Supp. 2d 46, 49 (D.D.C. 1999). There is no reason to treat the two doctrines differently for purposes of *Irwin* analysis.

Based on this reasoning, this Court has treated the continuing violations doctrine as identical to the equitable tolling rule for purposes of *Irwin*. In *Felter v. Norton*, this Court concluded that "where the statute of limitations has been deemed jurisdictional, it has acted as an absolute bar and cannot be overcome by the application of judicially recognized exceptions," such as "the continuing violations doctrine." 412 F. Supp. 2d at 122. As a result, the Court first conducted its sovereign immunity analysis, dismissed those claims which were not "of a type familiar to private litigation" (quoting *Chung*), and applied the continuing violations doctrine only to the remaining claims. *Id.* at 124-26.

The Eleventh Circuit, the only Court of Appeals to have decided this issue squarely, agreed that sovereign immunity prevented it from extending the continuing violation doctrine to

-11-

suits to compel the performance of an agency's duty to regulate according to a statutory deadline. *See Center for Biological Diversity*, 453 F.3d at 1335. The Endangered Species Act imposes statutory deadlines for the Secretary of the Interior to designate "critical habitat" for threatened species, and contains a citizen suit provision similar to TSCA's permitting actions to enforce that duty. *See* 16 U.S.C. §§ 1533(b)(6), § 1540(g)(1)(C). The Eleventh Circuit held that applying the continuing violation doctrine to an action brought more than six years after the statutory deadline for designating critical habitat was inconsistent with a strict construction of waivers of sovereign immunity. *Center for Biological Diversity*, 453 F.3d at 1335.

The consequences of finding that the continuing violation doctrine applies to cases seeking to compel regulation would be directly contrary to the purposes of § 2401(a). If failure to meet a statutory deadline were a continuing violation, then a plaintiff would effectively be able to sue forever, since no alternative statute exists to provide agencies with repose – a result which the Court should avoid. *See Klehr v. A.O. Smith Co.*, 521 U.S. 179, 187 (1984) (describing a rule that would permit a series of violations to continue indefinitely as beyond what "Congress could have contemplated" and in conflict with "a basic objective – repose"). Congress imposes many deadlines on federal agencies, makes those deadlines enforceable through citizen suit provisions (as in TSCA) or through the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), and is well aware throughout this process of the default limitations period in § 2401(a). To apply the continuing violations doctrine such that, effectively, there is no limitation on the timing of citizen suits is not a "realistic assessment of legislative intent." *See Irwin*, 498 U.S. at 95. The better alternative is to allow the public a full six years to bring their claims to the courts, as authorized by express statutory language in § 2401(a), and then rely on Congress's ability to weigh the

-12-

nation's changing regulatory priorities and (if necessary) to authorize further resort to the courts.

Even if the Court were to conclude that the United States' waiver of sovereign immunity against claims to compel regulation can be extended by the continuing violations doctrine, PEER has not alleged facts supporting the application of that doctrine here. Where an agency has a duty to regulate according to a statutory deadline, that deadline creates "not an ongoing duty but a fixed point in time at which the violation for the failure of the Secretary to act arises." *Center for Biological Diversity*, 453 F.3d at 1335 (concluding that an agency's failure to complete regulation by a statutory deadline is not a continuing violation). This is consistent with this Circuit's law, which has described the statutory deadline as integral to a nondiscretionary duty claim under a citizen suit provision such as 15 U.S.C. § 2619. *See Sierra Club v. Thomas*, 828 F.2d 783, 789-91 (D.C. Cir. 1987) (describing an agency's duty to act prior to a statutory deadline as a "duty of timeliness"). The statutory violation that PEER has alleged under TSCA's citizen suit provision is thus not a continuing violation: EPA is not alleged to have violated any duty of timeliness within the last six years, but specifically on October 29, 1996.

**E.     The D.C. Circuit has not previously ruled on the question presented in this Motion.**

In one previous case, this Court concluded that *Irwin* and its progeny did not permit the application of equitable tolling or the continuing violations doctrine to § 2401(a) in a claim under the APA, alleging that the National Park Service ("NPS") had failed to complete certain regulatory duties under the Wilderness Act, 16 U.S.C. § 1131 *et seq. See Wilderness Society v. Norton*, No. 03-cv-64 (RMC), 2005 WL 3294006 (D.D.C. 2005). The D.C. Circuit upheld the District Court's decision on other grounds but, in *dicta*, questioned it on this point, stating that "it is unlikely that [plaintiff's] complaint would be held by this court to be time-barred by 28 U.S.C.

-13-

§ 2401(a)." *Wilderness Society v. Norton*, 434 F.3d 584, 589 (D.C. Cir. 2006).

Although the D.C. Circuit's statement in *Wilderness Society* addresses issues related to this Motion, that decision does not control this case and does not require this Court to accept jurisdiction over PEER's claim. This is true for at least three reasons, which, taken together, demonstrate that the specific question before the Court in this Motion has not yet been decided in this Circuit.

      1.    <u>The D.C. Circuit's statement in *Wilderness Society* was non-binding *dicta*.</u>

First, the D.C. Circuit in *Wilderness Society* questioned the District Court's *Irwin* analysis only in *dicta*, noting that "we need not reach a final determination on this issue because we find TWS lacks standing as to its statutory claims." 434 F.3d at 588. NPS had not tried to defend the District Court's statute of limitations holding on appeal, and so the D.C. Circuit did not have the benefit of full briefing from the parties when it made its observation about the probable fate of that argument on appeal. (Indeed, the Wilderness Society provided the D.C. Circuit with eighteen pages of briefing against the application of § 2401(a) in its opening brief, and NPS's response brief devoted only one footnote to the issue, noting that the court did not need to reach it.) The D.C. Circuit's brief analysis of this issue was therefore perhaps not as carefully reasoned as would have been possible if both sides had presented argument on it. This is one reason that the District Court should not apply the *dicta* of the Court of Appeals, even if they were on point, as though they were binding. *See United States v. Torres*, 115 F.3d 1033, 1036-37 (D.C. Cir. 1997) (noting that, although the District Court had followed a statement of the Court of Appeals as if it were a holding, the statement was *dicta* only and therefore had not been binding on the District Court). This is especially true with respect to *Wilderness Society*, in which the D.C.

-14-

Circuit explicitly noted that its comments concerning the statute of limitations were not necessary to its decision.

2.    *Wilderness Society discussed the application of § 2401 to a different cause of action.*

*Wilderness Society* also differs meaningfully from the present case because it involved a cause of action for unreasonable delay brought under the APA, which embodies a different standard for the accrual of the cause of action.  The plaintiffs in *Wilderness Society* sought to force NPS to perform certain actions, specified in the Wilderness Act, under the APA provision that permits a court to "compel agency action . . . unreasonably delayed."  434 F.3d at 587 (citing 5 U.S.C. § 706(1)).  Under that statutory standard, the time that a cause of action accrues is arguably less certain, because a plaintiff could not institute and maintain a suit in court until an agency's delay was "unreasonabl[e]."  Moreover, a claim to compel agency action under the APA is in the nature of a request for a writ of mandamus – equitable relief that requires the application of a flexible multi-factored test.  *See In Re American Rivers & Idaho Rivers United,* 372 F.3d 413, 418-20 (D.C. Cir. 2004) (describing the standard for mandamus relief under the APA as "hardly ironclad"); *Telecommunications Research & Action Center v. FCC,* 750 F.2d 70, 75-77 (D.C. Cir. 1984).  As a result, not all instances in which an agency has missed a statutory deadline for a particular action could give rise to a suit under the APA to compel the action.  *See, e.g., Barr Labs.,* 930 F.2d at 74-75 (noting that the passage of a statutory deadline is only one element in determining whether agency delay is unreasonable).[2]

_____

[2]The plaintiff in *Wilderness Society* relied heavily on this uncertainty factor in presenting its unopposed statute of limitations argument to the D.C. Circuit.  This emphasis – which could not exist in the TSCA context – further favors limiting *Wilderness Society* to its APA context.

-15-

The APA unreasonable delay claim stands in marked contrast to a claim under the TSCA provision at issue here, which does not permit EPA any defense to liability on the grounds that a delay is "reasonable." TSCA plainly specifies a date by which EPA must act and grants no discretion for EPA to amend that date. There is no uncertainty in 15 U.S.C. § 2682(c), as there may be under the APA standard, as to the date upon which a cause of action may accrue. Nor is there any uncertainty in the TSCA citizen suit provision, 15 U.S.C. § 2619: "Any person" may sue after the Administrator fails to perform an action that is "not discretionary." Under this standard, the cause of action arises not when delay is unreasonable, but when there is any delay at all beyond the statutory deadline.

This difference between the respective causes of action under the APA and TSCA helps to explain why the D.C. Circuit's observation about APA cases – that it "has repeatedly refused to hold that actions seeking relief *under [the APA] to 'compel agency action unlawfully withheld or unreasonably delayed'* are time-barred if initiated more than six years after an agency fails to meet a statutory deadline," *Wilderness Society*, 434 F.3d at 588 (emphasis added) – does not fit in the TSCA citizen suit context. The APA affords the court discretion to weigh other factors against the statutory deadline in determining when an "unreasonable delay" claim becomes viable. TSCA's citizen suit provision is more straightforward, focusing simply on whether the Administrator has failed to perform a duty that is not discretionary. *See Biodiversity Legal Found. v. Norton*, 285 F. Supp. 2d 1, 7-8 (D.D.C. 2003) (contrasting the "date-certain deadline" of the Endangered Species Act's nondiscretionary duty and citizen suit provisions with other "general dut[ies] of timeliness" that should be enforced under the APA); *New York Public Interest Research Group v. Whitman*, 214 F. Supp. 2d. 1, 6 (D.D.C. 2002) (contrasting the broad

-16-

equitable relief available under the APA with the specific power to compel an agency to perform

nondiscretionary duties under the Clean Air Act). Because of this important difference between

APA and TSCA claims, the D.C. Circuit's statement in *Wilderness Society* simply does not apply

here, and the Court must find that PEER's cause of action was time-barred six years after the

passage of the statutory deadline.

        3.    <u>The D.C. Circuit's reasoning in *Wilderness Society* was incorrect and should not carry over into a non-APA context.</u>

      This Court also should not follow the *dicta* in *Wilderness Society* concerning the statute

of limitations because that statement was not fully reasoned and supported by the precedents

cited. The D.C. Circuit simply did not address the issues of the court's subject matter

jurisdiction, the scope of the waiver of sovereign immunity in § 2401(a), or the question of

whether the claim was analogous to one available in private litigation – despite the fact that those

issues are central to a consideration of claims against the United States. The court's suggestion

that § 2401 simply does not apply to claims of agency inaction contravenes its prior statement

that § 2401 applies to "all civil actions whether legal, equitable, or mixed." *Spannaus*, 824 F.2d

at 55 ("[T]he words 'every civil action' [in § 2401(a)] mean what they say"). If the D.C. Circuit

had not disposed of the claims at issue in *Wilderness Society* on other grounds, it would have

been obliged to examine the question of sovereign immunity as a limit on its own jurisdiction.

*See, e.g.*, *Trudeau v. FTC*, No. 05-5363, 2006 WL 2087122, *3 (D.C. Cir. July 28, 2006) (citing

*LoBue v. Christopher*, 82 F.3d 1081, 1082 (D.C. Cir. 1996)).

      In addition, the precedents that the court cited in opining on the statute of limitations

question did not support its conclusion on that issue, and certainly do not require this Court to

accept jurisdiction over PEER's claim. *In re United Mine Workers*, 190 F.3d 545 (D.C. Cir. 1999), involved a petition for a writ of mandamus to compel the Mine Safety and Health Administration to issue certain regulations concerning the permissible level of diesel exhaust in underground coal mines. An intervenor suggested that this petition was actually a challenge to other diesel equipment rules that had been promulgated in 1996, and that it was untimely because it was not filed within the statutory 60-day period for challenges to that rule. *Id.* at 548. The court held that the petition for mandamus sought a new rule on a completely different topic, and was not subject to the 60-day limitation on challenges to the 1996 rule. *Id.* at 548-49. Therefore, when the court stated that it was allowing the petition because it "does not complain about what the agency has done but rather about what it has yet to do," *id.* at 549, it was not holding that *any* complaint about "what [the agency] has yet to do" was outside the scope of statute of limitations analysis; it was merely stating that the complaint need not have been filed within the 60-day petition period that had applied to the 1996 rule. This sentence, however, was quoted in *Wilderness Society* for a completely different proposition, i.e., that the six-year statute of limitations in § 2401(a) does not apply to any APA claim of unreasonable delay. 434 F.3d at 589.

Similarly, *In re Bluewater Network*, 234 F.3d 1305 (D.C. Cir. 2000), involved a petition for writ of mandamus to compel the Coast Guard to promulgate certain regulations concerning protective monitoring devices for oil tankers. The court considered the same argument as in *United Mine Workers*, i.e., that the petition should have been brought within the 90-day period to challenge an earlier rulemaking and was now untimely. The court held that the 90-day limitation period did not apply to the new challenge because the previous rulemaking had instituted only a

-18-

temporary rule, and that the new petition (for a *permanent* rulemaking) was beyond the scope of potential challenges to the previous rulemaking. *Bluewater Network*, 234 F.3d at 1312-14. Again, the court did not consider the question whether the petition before it was time-barred by any statute of limitations.[8/]

By suggesting that these prior cases may illustrate a clear dichotomy between claims challenging "what the agency has done" (in which the statute of limitations would apply) and claims challenging "what the agency has yet to do" (in which it would not), the statement in *Wilderness Society*, 434 F.3d at 589, went well beyond the reach of those prior cases. Neither *United Mine Workers* nor *Bluewater Network* involved a defense under § 2401(a) that the challenge to agency inaction was time-barred, and neither supports the statement in *Wilderness Society* that the court would likely reject such a defense. Instead of focusing on these inapposite cases concerning agency delay claims under the APA, the Court should begin with the required sovereign immunity analysis to determine whether it has jurisdiction.

## CONCLUSION

For the foregoing reasons, EPA respectfully requests that the Court dismiss PEER's Complaint with prejudice.

---

[8/]The Court may also note that, like *Wilderness Society*, both *United Mine Workers* and *Bluewater Network* involved claims for mandamus relief. They are thus further distinguishable from PEER's claim on the grounds that the mandamus relief authorized by the APA is different from the relief authorized under 15 U.S.C. § 2619. *See supra* pp. 15-17.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

DAVID GUNTER
Environmental Defense Section
United States Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3896
(202) 514-3785

*Attorneys for United States Environmental Protection Agency*

Dated: August 31, 2006

-20-