IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 05-CV-02437 (CKK) |
| STEPHEN JOHNSON, Administrator, United States Environmental Protection Agency, et al. | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS  MEMORANDUM OF POINTS & AUTHORITIES
IN OPPOSITION TO DEFENDANT EPA S MOTION TO DISMISS**

Presently before the Court is Defendant U.S. Environmental Protection Agency s  (EPA)

Motion to Dismiss pursuant to the Federal Rules of Civil Procedure (Fed. R. Civ. P.), Rule

12(b)(1), alleging that the Court lacks subject matter jurisdiction.   EPA contends that the general

six year statute of limitations applicable to civil actions against the United States found at 28

U.S.C. § 2401(a) bars this action.  In fact, that provision does not bar Plaintiffs  suit, and EPA s

Motion should be denied.

**STATEMENT OF FACTS**

Childhood lead poisoning is an issue of significant concern to the public and public

health professionals.  Complaint ¶s 31 - 33, 36, 38 - 40.  Relatively recent data used to measure

lead in children s bodies reveals that over 400,000 children have <u>elevated</u> blood lead levels.

Complaint ¶ 18.   Despite the efforts of public health officials to measure and qualify the impacts

of lead exposure, no  safe  level of lead exposure has been determined.  In other words, no

threshold has been discovered below which blood lead levels in children can be presumed to have no impact.  Complaint ¶ 20.

To combat this serious public health problem, Congress amended the Toxic Substances Control Act (TSCA)  in 1992.  *See, generally*, 15 U.S.C. §§ 2601 - 2692.  Specifically, Subchapter IV, entitled *Lead Exposure Reduction*, was added to TSCA to address the problems of exposures caused by lead-based paint.  See, TSCA, 15 U.S.C. §§ 2681 - 2692.   The 1992 amendments to TSCA set forth deadlines by which the EPA was to issue rules and regulations regarding lead-based paint and lead-based paint activities, with the ultimate goal of eliminating lead-based paint hazards by 2010.  15 U.S.C. § 2682.

Pursuant to TSCA, EPA was required to:

(a)     Issue final regulations governing lead-based paint activities by April 28, 1994, to make sure that individuals are properly trained; that training programs are accredited; that contractors engaged in such activities are certified.  15 U.S.C. § 2682(a)(1).  Lead-based paint activities include abatement, inspection, and risk assessment    they do not include Renovation and Remodeling (  R&R  ). 15 U.S.C. § 2682(b).

(b)     Issue guidelines for R&R activities by April 28, 1994. 15 U.S.C. § 2682 (c)(1).

( c )     Conduct and publish the results of a study of the extent to which people engaged in R&R are exposed to lead (either through the work itself or because they disturb lead and create a lead-based paint hazard) by April 28, 1995. 15 U.S.C. § 2682(c)(2).

(d)     Revise the regulations governing lead-based paint activities  to apply the regulations to renovation or remodeling activities in target housing, public buildings constructed

2

before 1978, and commercial buildings that create lead-based paint hazards by October 28, 1996. 15 U.S.C. § 2682( c)(3).

Although EPA proceeded as though it would issue regulations covering R&R activities in target housing, public building constructed before 1978, and commercial buildings that create lead-based paint hazards, no regulation was issued.  For example, in November 1996, EPA announced in the Federal Register that it intended to promulgate the regulations by December 1998.  See, Exhibit 1, Excerpt from November 29, 1996 Federal Register.

In April 1997, EPA notified the public that it would issue final regulations as mandated in TSCA § 402(c)(3) (15 U.S.C. § 2682(c)(3)) by March 1999.  See, Exhibit 2, Excerpt from April 25, 1997 Federal Register.

In April 1998, EPA made another public announcement regarding the promulgation of regulations for renovation and remodeling activities involving lead-based paint.  The agency stated that it would issue final regulations in June 2000.  See, Exhibit 3, Excerpt from April 27, 1998 Federal Register.  In November 1998, EPA again revised its regulatory schedule announcing that final regulations would be issued by September 2001.  See, Exhibit 4, Excerpt from November 9, 1998 Federal Register.

In December 2004, EPA stated that it was pursuing a voluntary program for R&R activities.  See,  Lead-based Paint Activities; Abatement Amendments for Renovation and Remodeling,  Federal Register , Vol. 69, No. 238, p. 73901 (December 13, 2004).  However, by December 2005, the agency withdrew its proposal for a voluntary program.  See,  Lead-based Paint Activities; Voluntary Program for Renovation and Remodeling,  Federal Register, Vol. 70, No. 93, p. 27633 (May 16, 2005).  No further proposal to address the agency s mandate under

TSCA to promulgate R&R regulations appeared to be forthcoming; prompting Plaintiffs to file this lawsuit.

## ARGUMENT

## I.  EPA HAS NOT ASSERTED GROUNDS FOR A JURISDICTIONAL DISMISSAL

EPA has sought dismissal under Fed.R.Civ.P. 12(b)(1), providing for a defense of  lack of jurisdiction over the subject matter,   claiming that the statute of limitations provided by section 2401(a) is  a limit on the Court s Jurisdiction.   EPA Motion at 3.   However, the Supreme Court has expressly rejected the proposition that time limitations with respect to suits against the United States are jurisdictional.  In *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89 (1990), the Supreme Court rejected the lower court s holding that the statute of limitations there  operates as an absolute jurisdictional limit. [1]   Rather, the Court found, the limitations period was subject to equitable tolling. 498 U.S. at 95-96.  The Supreme Court has since repeatedly confirmed that, despite pre-*Irwin* statements to the contrary, federal statutes of limitations,   are not properly typed jurisdictional.   *E.g., Scarborough v. Prinicipi*, 541 U.S. 401, 414 (2004); *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1242 (2006).

The D.C. Circuit has also recognized that while pre-*Irwin* cases regarded   a statutory time limit [as] an integral condition of the sovereign s consent  to be sued and a  prerequisite to jurisdiction,   *Irwin* clarified that this was not the case.  *Chung v. Dept. of Justice*, 333 F.3d 273, 276 (D.C. Cir. 2003).  *See also*, *Harris v. Fed. Aviation Admin.*, 353 F.3d 1006, 1013, n.7 (D.C. Cir. 2004) (noting that while earlier D.C. Circuit cases construed section 2401(a) as a

---

[1]  498 U.S. at 92.  The statute of limitations at issue in *Irwin,* 42 U.S.C. § 2000e-16(c), set out the time for filing employment discrimination suits under Title VII of the Civil Rights Act of 1964.

jurisdictional bar, since *Irwin*, that holding has been brought into question).[2]

EPA nevertheless claims, in reliance on *Felter v. Norton*, 412 F. Supp. 2d 118 (D.D.C. 2006), that even after *Irwin*, the statute of limitations in section 2401(a) remains jurisdictional with respect to claims which are not of a type familiar to private litigation. EPA Motion at 11, *citing*, 412 F. Supp. 2d at 122. The *Felter* court relied upon the analysis in *Chung*, which actually examined the question of when the statute of limitations would be subject to equitable tolling under *Irwin*, not the question of jurisdiction. 333 F.3d at 276-77. The *Felter* analysis thus confuses two different issues addressed in *Irwin*: 1) whether statutes of limitations for actions against the government are jurisdictional; and 2) whether a particular cause of action under a particular statute of limitations is subject to equitable tolling.

The basic holding of *Irwin* is not limited to the particular exception to the statute of limitations addressed there, equitable tolling. Rather, the Court adopted a general rule that statutes of limitations against the government are *not* jurisdictional, and are subject to equitable exceptions. As detailed below, courts have applied several different exceptions to statutes of limitations for suits against the government, not just equitable tolling.[3] The fact that equitable tolling is not available in a particular case does not mean that the statute of limitations is not subject to any equitable exceptions at all, *i.e.*, is jurisdictional.

Subsequent Supreme Court cases such as *Scarborough* and *Arbaugh* have confirmed that

---

[2] Thus, EPA s reliance on the pre-*Irwin* cases of *United States v. Mottaz*, 476 U.S. 834, 841 (1986) and *Spannus v. Department of Justice*, 824 F.2d 52 (D.C. Cir. 1987), is misplaced. EPA Motion at 4-5.

[3] As EPA acknowledges, Motion at 11, the logic of *Irwin* and *Chung* should extend beyond equitable tolling to the continuing violation doctrine.

*Irwin* ruled broadly that statutory time limits in general are not jurisdictional. These cases state that the jurisdictional category is not to be applied to claim-processing rules, but only for prescriptions delineating the classes of cases (subject matter jurisdiction) and the persons (personal jurisdiction) falling within a court s adjudicatory authority. *E.g.*, *Scarborough*, 541 U.S. at 413-14, *quoting*, *Kontrick v. Ryan*, 540 U.S. 443, 454-455 (2004). In other words, *Irwin s* ruling on the non-jurisdictional nature of statutes of limitation was not dependent on whether a particular cause of action was subject to equitable tolling under a particular statute of limitations. *See also*, *e.g.*, *Supermail Cargo v. United States*, 68 F.3d 1204, 1206, n. 2 (9th Cir. 1995) (*Irwin* held that federal statutory time limitations on suits against the government are not jurisdictional in nature); *Lord v. Babbitt*, 943 F. Supp. 1203, 1210 (D. Alaska 1996), *aff d on other grounds*, 188 F.3d 513 (9th Cir. 1999), *cert. denied,* 530 U.S. 1214 (2000) ( After *Irwin*, federal statutes of limitations are no longer jurisdictional ).

The question of when the doctrine of equitable tolling is available is a separate one, and post-*Irwin* Supreme Court decisions have indeed ruled that the doctrine is not applicable to certain statutory schemes, for reasons peculiar to those statutes. *United States v. Brockamp*, 519 U.S. 347 (1997) (tax laws); *United States v. Beggerly*, 524 U.S. 38 (1998) (Quiet Title Act). Those cases did not hold, and could not hold, consistent with *Irwin*, *Scarborough* and *Arbaugh*, that statutes of limitations which are not subject to equitable tolling are therefore jurisdictional.

It seems that the court in *Felter* looked at the case law concerning when equitable tolling applies, and wrongly assumed that when it does not apply, the applicable statute of limitations is

rendered jurisdictional.  This is a confusion of the issues and a misreading of the precedents.[4]

Thus, EPA has failed to assert grounds for a jurisdictional dismissal under Fed.R.Civ.P. 12(b)(1).  The absence of grounds for a jurisdictional dismissal has implications with regard to the classification of EPA s motion, which impacts the standard of review and the evidence to be considered, as discussed in Part II below.  Equally important is how this fact impacts the merits of EPA s claim.  Plaintiffs  claim is not subject to a jurisdictional dismissal because the Supreme Court has held that in spite of the government s sovereign immunity, statutes of limitations for suits against the United States are not absolute, but are subject to exceptions based on various equitable doctrines and policy considerations which the Court must take into account.  For example, courts have found exceptions for equitable tolling, *e.g.*, *Irwin*,  and for continuing violations. *E.g.*, *American Canoe Ass n v. EPA*, 30 F. Supp. 2d 908, 925-26 (E.D. Va. 1998).

There is also a doctrine which tolls the statute of limitations on substantive challenges to federal regulations until the time a particular plaintiff is adversely affected by the regulations.  In *Wind River Mining v. United States*, 946 F.2d 710, 715 (9th Cir. 1991), the Ninth Circuit relied on D.C. Circuit precedent to find that this doctrine, as applied to section 2401(a),  strikes the correct balance between the government's interest in finality and a challenger's interest in contesting an

---

[4] Furthermore, as discussed below (Part IV), *Felter s* conclusion, based on *Chung*, that equitable tolling does not apply to causes of action that  do not have an analogue in private litigation and are not injuries of a type familiar to private litigation,  412 F. Supp. 2d at 123, is faulty.  The subsequent Supreme Court decision in *Scarborough* rejected a claim that *Irwin* did not apply to a cause of action with no analogue in private litigation, stating that  it is hardly clear that *Irwin* demands a precise private analogue. . . . *Irwin s* reasoning would be diminished were it instructive only in situations with a readily identifiable private-litigation equivalent.   541 U.S. 401, 422 (2004).  Also, the only Supreme Court cases that determined that equitable tolling did not apply, *Scarborough* and *Brockamp,* did so on other grounds, and not because the claims there were not  of a type familiar to private litigation.

agency's alleged overreaching.    *Accord, e.g., Dunn-McCampbell Royalty Interest v. National Park Service*, 112 F.3d 1283, 1287 (5th Cir. 1997); *Alaska Legislative Council v. Babbitt*, 15 F. Supp. 2d 19, 24 (D.D.C. 1998).  This particular doctrine, while not directly applicable to the facts here, is relevant because it demonstrates that, without running afoul of sovereign immunity, courts may fashion exceptions to statutes of limitations based upon equitable principles such as policy considerations and a balancing of interests.

As discussed in Parts III and IV below, here the equities, as well as the case law, weigh heavily in favor of requiring EPA to comply with its congressionally-mandated nondiscretionary duty, rather than being permitted to evade that duty simply because it has failed to act for a sufficiently long period of time.  This is especially the case because EPA lulled the public into believing that the required regulations would be issuing at least until 2001, well within the statute of limitations.  It did not become apparent that EPA had abandoned all efforts to comply with its statutory duty until December, 2005.  *See*, Statement of Facts, above, and Part IV, below.

## II.  EPA S MOTION MAY DENIED UNDER RULE 12(b)(6), OR IN THE ALTERNATIVE, CONVERTED INTO A MOTION FOR SUMMARY JUDGMENT

Assuming that EPA s motion can be decided on the pleadings, it may be converted into a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See, e.g., Gordon v. Nat l Youth Work Alliance*, 675 F.2d 356, 360 (D.C. Cir. 1982) (the proper means to raise a defense of limitations is by 12(b)(6), not 12(b)(1)); *Supermail Cargo*, 68 F.3d at 1206, n. 2 ( because the question whether Supermail's claim is barred by the statute of limitations is *not* a jurisdictional question, it should have been raised through a Rule 12(b)(6) motion to dismiss for failure to state a claim, not a Rule 12(b)(1) motion to dismiss for lack of jurisdiction ).

Under Rule 12(b)(6), there is a different standard of review from that applicable to

12(b)(1).

> Because subject-matter jurisdiction focuses on the court's power to hear the claim . . . the court must give the plaintiff's factual allegations closer scrutiny when resolving a *Rule 12(b)(1)* motion than would be required for a *Rule 12(b)(6)* motion for failure to state a claim. *Macharia v. United States,* 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States,* 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64,  (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.,* 406, 974 F.2d 192, 197 (D.C. Cir. 1992).

*FEC v. Club for Growth, Inc*., 432 F. Supp 2d 87, 89 (D.D.C. 2006). See, EPA Motion at 3.

In contrast, under Rule 12(b)(6), a complaint may not be dismissed   unless if appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle

him to relief.    *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In addition, a Rule 12(b)(6) motion

may be entertained only if materials outside of the pleadings are not needed to resolve the motion.

Rule 12(b); *Morrison v. Amway Corp.*, 323 F.3d 920 (11th Cir. 2003) (See, Part III of the Court s

opinion).   A complaint is subject to dismissal under 12(b)(6) when its allegations, *on their face*,

show that an affirmative defense bars recovery on the claim.    *Cottone v. Jenne*, 326 F.3d 1352,

1357 (11th Cir. 2003) (emphasis supplied).   If outside materials are needed, the court must convert

the motion into one for summary judgment, and afford the parties a reasonable opportunity to

present materials pertinent to a Rule 56 motion.  *Gordon*, 675 F.2d at 360.  *Accord, Marshall*

*County Health Care Authority v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

Plaintiffs contend that Defendant s Motion should be dismissed pursuant to Rule 12(b)(6),

based on the arguments presented in Part III, below.  No materials outside of the pleadings are

needed to determine that the six year statute of limitations under section 6401(a) is not applicable,

either because TSCA provides that there is no outside limitation on when a citizen suit can be

brought, or because section 6401(a) does not apply to claims that agencies have failed to perform

nondiscretionary duties.  If however, the Court does not accept those arguments, it must consider

Plaintiffs  alternative argument that the statute of limitations is subject to equitable tolling (Part

IV).  To determine that question, the court may need to examine facts outside of the pleadings

concerning EPA s actions with regard to the mandated rulemaking at issue here. Plaintiffs have

submitted exhibits in support of their equitable tolling argument which are excerpts from Federal

Register notices.  If the Court determines that it cannot take judicial notice of these notices, or if

EPA wishes to supply additional facts in response, EPA s motion would need to be converted into

a Rule 56 motion for summary judgment.[5]

## III.  THE STATUTE OF LIMITATIONS PROVIDED IN § 2401(a) DOES NOT APPLY TO CITIZEN SUITS SEEKING TO ENFORCE EPA S MANDATORY DUTIES UNDER TSCA

EPA  Motion should be denied as a motion under Rule 12(b)(6), because the statute of

limitations provided in § 2401(a) does not apply to citizen suits seeking to enforce EPA s

mandatory duties under TSCA.

---

[5] *See*, *Supermail*, 68 F.3d at 1206-07:  Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it  is not generally amenable to resolution on a Rule 12(b)(6) motion.  . . .  *Cervantes v. City of San Diego, 5 F.3d 1273, 1276 (9th Cir. 1993).* . . . For this reason, we have reversed dismissals where the applicability of the equitable tolling doctrine depended upon factual questions not clearly resolved in the pleadings. *See Cervantes, 5 F.3d at 1277; Emrich v. Touche Ross & Co., 846 F.2d 1190, 1199 (9th Cir. 1988); Donoghue v. Orange County, 848 F.2d 926, 931 (9th Cir. 1987).*  Similarly, we must reverse if the factual and legal issues are not sufficiently clear to permit us to determine with certainty whether the doctrine could be successfully invoked.

A.  TSCA s Citizen Suit Provision Permits Complaints to Be Filed at Any Time, as Long as at Least 60 Days Has Elapsed after Provision of Notice to the Administrator of EPA.

EPA s Motion rests on the assumption that 15 U.S.C. § 2619(a), the citizen suit provision of TSCA under which Plaintiffs have brought suit, does not specify a limitations period, and that therefore the general six year statute of limitations in 28 U.S.C. § 2401(a) is applicable.  EPA Motion at 3.  That basic assumption is incorrect.  Section 2619 does contain a  Limitation section, found at section 2619(b).  That section does not dictate a limitation period for citizens seeking enforcement of EPA s nondiscretionary duties.  Instead, it requires only that such suits not be commenced before the expiration of 60 days after the plaintiff has given notice to the Administrator.  There is no dispute but that Plaintiffs have met that condition here.

The fact that the section provides only a minimum time after notice to the Administrator for filing suit, and does not specify an outer limit to that time, does not mean that Congress intended the outer limit to be supplied by another statute.  Congress certainly could have established such a limit when it addressed  limitations  in TSCA.  It chose not to do so, and so it must be assumed that an unlimited period was intended.  *See*, *Northwest Bank Minnesota National Ass n v. FDIC*, 312 F.3d 447, 451 ( D.C. Cir. 2002) (When a statute has a specific limitations period, the catch-all provision at section 2401(a) does not apply).  Plaintiffs have not discovered any case law indicating that section 2401(a) sets a limitation period for TSCA citizen suits and EPA cites nothing indicating that Congress intended section 2401(a) to apply.

The absence of a limited period for filing suits to compel EPA to perform nondiscretionary duties comports with the general purpose of citizen suit provisions.  The Supreme Court has described the  obvious purpose  of a nearly identical citizen suit provision in the Endangered

Species Act as to encourage enforcement by so-called private attorneys general, with the intent to permit enforcement by everyman. *Bennett v. Spear*, 520 U.S. 154, 166 (1997). The *Bennett* Court relaxed the usual standing requirements (to eliminate the zone of interests test), in order to further this congressional purpose. A congressional intent not to set a time limit on citizen efforts to enforce TSCA is equally plausible, and is consistent with the plain language of the citizen suit provision itself.

The absence of a statute of limitations also makes sense in terms of the purposes intended to be served by such statutes of repose, which are to quiet stale controversies, the evidence as to which may be eroded by time. *Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc.*, 452 F.2d 1346, 1356 (D.C. Cir. 1971). With regard to the failure to perform a nondiscretionary duty, there is no issue of a stale controversy or of evidence eroded by time, and thus no purpose to be served in imposing a statute of limitations. The Supreme Court has ruled that where a violation is continuing in nature, the staleness concerns intended to be addressed by statutes of limitations are not invoked, and any applicable statute of limitations is tolled. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982). Because TSCA s citizen suit provision at 15 U.S.C. §2619(a)(2) is applicable only to continuing violations, *i.e.,* to situations in which EPA has failed to perform a mandatory duty which remains an ongoing requirement under the statute, there is no need for a statute of limitations.[6]

EPA asserts that allowing a plaintiff to be able to sue forever is a result which the

---

[6] The TSCA citizen suit provision also does not place an outer limit on the filing of suits against violators pursuant to 15 U.S.C. § 2619(a)(1). Because that provision applies to suits against parties alleged to be in violation of this chapter . . . to restrain such violation it applies only to current violations and thus no statute of limitations is needed.

Court should avoid.   EPA Motion at 12.  However, EPA s only authority for this claim is a

Supreme Court case which invokes the very factors that are not present here:

> permitting plaintiffs who know of the defendant's pattern of activity simply to wait,
>  sleeping on their rights,  . . . as the pattern continues and treble damages
> accumulate, perhaps bringing suit only long after the memories of witnesses have
> faded or evidence is lost.

*Klehr v. A.O. Smith Co.,* 521 U.S. 179, 187 (1997) (citations and internal quotation marks

omitted).  EPA never directly confronts the argument that there is no need for  repose,  and

indeed public policy militates against  repose,  when a federal agency remains in dereliction of a

mandatory duty imposed by Congress.  Under the Supreme Court s ruling in *Havens Realty*, there

is no need for a statute of limitations in the situation presented here.

As shown in the next section, even where section 2401(a) is the applicable limitations

provision, these types of considerations have led courts to refuse to apply its six year limit to

challenges to failures to perform nondiscretionary duties.

B.  The Statute of Limitations at Section 2401(a) Does Not Apply to Failures to
Perform Nondiscretionary Duties

Even assuming that section 2401(a), and not TSCA § 2619(b), supplies the applicable

statute of limitations here, the limitation would not be applicable to the failure to act alleged here.[7]

As the court stated in *The Wilderness Society v. Norton*, 434 F.3d 584, 588 (D.C. Cir. 2006), the

D.C. Circuit has never applied section 2401(a) s six year limitation period to a suit alleging an

agency s failure to meet a statutory deadline.  A significant portion of EPA s brief is occupied

_____

[7]  Conceptually, the cases reaching this conclusion can be viewed as holding that the
statute of limitations does not apply, or that the continuing violation exception to the statute of
limitations applies, or that the statute does not begin to run as long as the agency has not acted.
Under any of these formulations, the same basic reasoning is used to support the conclusion that
the case may proceed.

with a fruitless attempt to distinguish *Wilderness Society*.  EPA Motion at 13-19.

EPA argues that the statute of limitations discussion in *Wilderness* is *dicta* because the case was dismissed on other grounds.  However, the D.C. Circuit carefully analyzed the issue and relied on prior Circuit rulings which held (not in *dicta*) that cases brought more than six years after the expiration of a statutory deadline were not barred.  *In re United Mine Workers of America International Union*, 190 F.3d 545 (D.C. Cir. 1999) (suit brought 8 years after failure to meet statutory deadline); *In re Bluewater Network*, 234 F.3d 1305 (D.C. Cir. 2000) (suit timely where statutory deadline missed by nine years).  *Wilderness*, 434 F.3d at 588-89.  The rationale for allowing these suits was that the agency was engaged in a continuing violation with respect to its mandatory duties, and that the plaintiffs did  not complain about what the agency has done but rather about what the agency has yet to do.   *Id.*, quoting *United Mine Workers,* 190 F.3d at 549.

The rule in the D.C. Circuit is consistent with other case law and with the policies underlying equitable exceptions to statutes of limitations.  It  strikes the correct balance between the government's interest in finality and a challenger's interest in contesting an agency's alleged overreaching.   *Wind River Mining,*  946 F.2d at 715-16.  As several courts have noted, imposition of the statute of limitations in these circumstances would contravene Congress  intent to have the agency perform the nondiscretionary duties which Congress assigned.

> [W]here there is only one body charged with a duty by Congress, and that body cannot be forced by the Court to carry out its duty because of a statute of limitations, the practical result is a repeal of the mandatory duty itself.  The statute was enacted in order to create a perpetual scheme for protecting the nation s water quality, and does not envision an intent for the mandatory duties of the Administrator to expire after a period of nonfeasance. . . . The practical effect of imposing a statute of limitations in a suit such as this is to repeal the mandatory duties established by Congress and the President without the constitutionally prescribed scheme for altering a statute of the United States.

. . . it would be perverse to excuse that duty after sustained nonfeasance.

*NRDC v. Fox*, 909 F. Supp. 153, 159 (SDNY 1995).  Likewise here, there is no claim that EPA's

duty to issue regulations to protect the public with regard to lead-based paint renovation and

remodeling activities has in any way been altered or rescinded.[8]    [I]t would be perverse to excuse

that duty after sustained nonfeasance.  109 F. Supp. 2d at 159.

The court reached a similar conclusion in *Southern Appalachian Biodiverstiy Project v.*

*U.S. Fish and Wildlife Service*, 181 F. Supp. 2d 883, 887 (E.D. Tenn. 2001).  That case held that a

suit filed more than six years after a statutory deadline for designating critical habitat for an

endangered species was not time-barred under section 2401(a), because    [i]f the Service's failure

to designate critical habitat is time-barred, then *no one* may compel the Service to do so.  An

anomaly would be presented.    *Id.* (emphasis in original).  The court rejected the argument which

the government presents here:  that the statute of limitations began to run the day after the action

was required to be completed, and that there was no indication that Congress intended the

government to be forever vulnerable to stale claims.  The court concluded that the will of

Congress was expressed in the provision of the Endangered Species Act which directed the

agency to designate critical habitat, and that the agency's non-action was a continuing violation of

that provision.    The statute of limitations commences to run anew each and every day that the

Service does not fulfill the affirmative duty required of it.  In short, the statute of limitations has

never commenced to run.  *Id.*

---

[8]  The fact that EPA recognizes its continuing duty to comply with TSCA is evidenced by
the fact that after this case was filed, the Agency issued proposed regulations purported to
implement its statutory duty to regulate renovations and repairs involving lead-based paint.  71
Fed. Reg. 1588 (Jan. 10, 2006).  The proposed regulations, however, have never been finalized,
and do not meet the requirements of the statute.

In *American Canoe Ass n v. EPA*, 30 F Supp.2d 908, 925-926 (E.D. Va. 1998), the court held that

> application of a statute of limitations to a claim of unreasonable delay [under a statutory deadline] is grossly inappropriate, in that it would mean that EPA could immunize its allegedly unreasonable delay from judicial review simply by extending that delay for six years. . . . EPA s delay is better understood as a continuing violation, which plaintiffs may challenge at any time provided the delay continues.

(citation and footnote omitted).[9]

Another way in which this issue has been analyzed to reach the same result is by determining when a cause of action accrues pursuant to section 2401(a). The courts in this Circuit and elsewhere have held that the action accrues, and the statute of limitations begins to run, when there is final agency action. *E.g.*, *Harris v. Federal Aviation Admin.*, 353 F.3d at 1010. Where there is a failure to act, there cannot be final agency action, and the statute of limitations cannot begin to run. *Save the Valley v. EPA*, 223 F. Supp. 2d 997, 1001, n. 1 (S.D. Ind. 2002) ( a failure to act cannot logically even trigger a statute of limitations ).

EPA has two basic arguments against the application of these precedents. The first is that, based on *Chung* and *Felter*, there can be no equitable exceptions to the statute of limitations unless the injury to be redressed is of a type familiar to private litigation. EPA Motion at 11, *quoting, Chung* 333 F.3d at 277. As explained above in Part I, this argument is faulty because the courts in *Chung* and *Felter* were attempting to determine whether, under *Irwin*, equitable tolling

---

[9] *See also, Eli Lilly & Co. v. EPA*, 615 F. Supp. 811, 822 (S.D. Ind. 1985) (the statue of limitations does not begin to run on a continuing violation until the wrong is over and done with ). *Accord*, *Sierra Club v. Penfold*, 664 F. Supp. 1299 (D. Alaska. 1987), *aff d on other grounds*, 857 F.2d 1307 (9th Cir. 1988).

would apply to a particular claim.[10]  Even assuming that equitable tolling is unavailable here, which is not the case, this would not mean that there are no other possible equitable exceptions to the statute of limitations, *i.e.*, that it is jurisdictional in nature.  As explained in *Wilderness Society*, which was decided after *Chung,* the D.C. Circuit has repeatedly ruled that there *is* an exception where the government has failed to carry out a nondiscretionary duty in compliance with a statutory deadline.  434 F.3d at 588-89.

EPA s other argument relies almost entirely on the decision in *Center for Biological Diversity v. Hamilton*, 453 F.3d 1331 (11th Cir. 2006), which determined that the continuing violations doctrine was not available with respect to the failure to meet a statutory deadline to designate critical habitat under the Endangered Species Act ( ESA ).  EPA Motion at 12-13.  This Eleventh Circuit case, of course, is not binding on this Court, unlike the D.C. Circuit precedents reaffirmed in *Wilderness Society*.   Moreover, the statute of limitations discussion in *Wilderness Society*, while not itself binding precedent, is a very recent indication that this Circuit would be likely to adhere to its prior precedents rather than change course to adopt the Eleventh Circuit s approach in *Hamilton*.

In addition, *Hamilton* is distinguishable because it rests on factors peculiar to the ESA.  The court began its analysis by stating that  [t]o determine whether the continuing violation doctrine applies, we must consider the text of the relevant statute, which is the Endangered Species Act.   453 F.3d at 1334.  The court concluded that the text of the ESA supported a single violation that accrued on the day following the deadline, rather than a continuing violation.  This

_____

[10] As discussed in Part IV, below, *Chung s* supposition that equitable tolling applies only to injuries of a type familiar to private litigation is not tenable in light of subsequent Supreme Court precedent.

interpretation of the ESA was based in part on the fact that the provision requiring the designation of a critical habitat by a certain date directed that it  be based on such data as may be available at the time.   The court found that this language supported the conclusion that the duty was not ongoing, but to be exercised at a particular point in time.  The court noted that it would be anomalous for Congress to require the Secretary to ignore new information when promulgating the rule.  453 F.2d at 1335.[11]

In contrast, there is nothing in the TSCA provision at 15 U.S.C. §2682(c)(3) to indicate that  EPA s duty is not ongoing.  The Administrator was directed to issue revised regulations which would apply training and certification requirements to renovation or remodeling activities in certain buildings that create lead-based paint hazards.  There is nothing that ties that duty to a particular point in time or indicates that the duty would lapse if not carried out within a certain time period.

Finally, EPA s contention that it only violated its duty of timeliness on one day, October 29, 1996 (the day after the statutory deadline), EPA Motion at 13, is absurd.  It implies that Congress wanted EPA to issue regulations on a certain date, and if that date passed, it had no further interest in the subject.  EPA s position creates the further anomaly that if it had missed the statutory deadline by one day, it would have been in violation of the statute and subject to the imposition of relief under the citizen suit provision. Yet, because it has missed the deadline by nine years, it is immune from suit and no relief for its violation is available. EPA s mandatory

---

[11]  As described above, the court in *Southern Appalachian Biodiverstiy Project* reached the opposite conclusion with regard to the same provision of the ESA.

duty has not lapsed, and its failure to carry out that duty is a continuing violation.[12]

## IV.  EVEN ASSUMING THAT SECTION 2401(a) APPLIES HERE, PRINCIPLES OF EQUITABLE TOLLING ALLOW COURT REVIEW AND ENFORCEMENT

The facts demonstrate that from at least as early as 1996, EPA has publicly stated its intention to issue final regulations concerning lead-based paint activities as required by TSCA, 15 U.S.C. § 2682(c)(3).  See, Exhibits 1 - 4.  In 2004, EPA claimed it would establish a voluntary program to regulate lead-based paint activities.  Then, in 2005, EPA ended the deception by withdrawing the suggestion that it would even propose a voluntary program.  Only after the EPA was faced with a notice of intent to sue followed by the filing of this lawsuit did the agency issue an inadequate proposed rule.

Realizing that the facts demonstrate that EPA has deceived the public and the Congress for almost a decade on this issue, the Agency takes an understandably defensive posture in its Motion. EPA argues that principles of equity and fairness should not be considered in this case.  Having lulled the public into believing that it would issue a regulation, EPA now wants to take advantage of its deception.  EPA Motion at 7–13 (arguing that neither equitable tolling nor continuing violation theory should be applied here).

EPA attempts to avoid equity and fairness by arguing that case law addressing the issue of equitable tolling in cases involving the government only permit equitable tolling in circumstances where  the claim is similar to a claim that could be brought against a private party.  EPA Motion

---

[12] EPA also attempts to distinguish *Wilderness Society* on the basis that it involved a claim for unreasonable delay under the APA, while TSCA provides a statutory deadline.  EPA Motion at 15-16.  This is a distinction without a difference since *Wilderness Society* based its holding on earlier D.C. Circuit cases which concerned the violation of a statutory deadline.  *See*, p.14, *supra*.

at 9.  EPA s argument is untenable, as it demands that the Court validate deception or fraud perpetrated by the government.

Under the great weight of case law, equitable tolling principles would be available to Plaintiffs here.  The case law that has examined the use of equitable tolling has recognized that it is the duty of the courts to assess the equities in cases where the facts indicate that strict application of a statute of limitations would result in an unjust outcome.  *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 558 B 559 (1974) (the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose); *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (equitable doctrines are read into every federal statute of limitations); *Irwin,*  498 U.S. at 95-96 (the "same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States"); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982) ("filing a timely charge of discrimination ... is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"); *Leavell v. Kieffer,* 189 F.3d 492, 494-95 (7th Cir. 1999) (statute of limitations not jurisdictional but instead affirmative defense).

The Court in *Irwin* expressed its intent to create a uniform rule regarding the application of equitable relief in cases involving the government:    We think that this case affords us an opportunity to adopt a more general rule to govern the applicability of equitable tolling in suits against the Government.   498 U.S. at 95. The Irwin Court held that:

Once Congress has made such a waiver, we think that making the rule of equitable

tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver. Such a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation. We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so.

498 U.S. at 95-96.

The holding in *Irwin* means that there is no meaningful distinction in the application of equitable tolling principles to private party litigation and litigation involving the government.

EPA argues that subsequent decisions have clarified the class of cases to which the rule of *Irwin* applies. EPA Motion at 8. The sole decision cited for this proposition is *Chung.* In *Chung*, the court determined whether equitable tolling principles could be applied to litigation against the government under the Privacy Act. The court ruled: [w]e conclude, therefore, that a Privacy Act claim for unlawful disclosure of personal information is sufficiently similar to a traditional tort claim for invasion of privacy to render the *Irwin* presumption applicable. *Chung*, 333 F.3d at 277. The court s reliance on the characterization of a claim against the government as a traditional tort claim in order to apply equitable principles is inconsistent with *Irwin s* broad rule.

Additionally, the analysis in *Chung* did not have the benefit of the later Supreme Court decision in *Scarborough*. There the Supreme Court discussed the rule in *Irwin* as applied in litigation involving the government. The Court stated that [b]ecause many statutes that create claims for relief against the United States or its agencies apply only to Government defendants, *Irwin s* reasoning would be diminished were it instructive only in situations with a readily identifiable private-litigation equivalent. 541 U.S. at 422. Also, *Chung s* speculation that the Supreme Court would not apply equitable tolling where there is not a private action analogue is

21

further undermined by the fact that the only Supreme Court cases that determined that equitable tolling did not apply, *Scarborough* and *Brockamp,* did so on other grounds, and not because the claims there were not  of a type familiar to private litigation.

Thus, application of equitable principles to litigation involving the government does not require a demonstration that the cause of action at issue has a  readily identifiable private-litigation equivalent.  *Scarborough*, 541 U.S. at 422.

From 1996 through 2001, EPA asserted in the Federal Register that it planned to promulgate final rules consistent with its obligations under TSCA (15 U.S.C. § 2682).  *See*, Exhibits 1- 4.  In 2004, the Agency claimed it would create a voluntary program, but then withdrew this proposal in 2005.  Complaint ¶s 25- 27.  Plaintiffs filed a notice of intent to sue and a lawsuit shortly thereafter.

Plaintiffs were induced into believing that the EPA was going to issue regulations in 1998, 1999, 2000, and 2001.  Exhibits 1- 4.  There was no reason for the Plaintiffs to file a lawsuit when EPA was declaring that it was about to issue the regulations.  *See, e.g.*, *In re Barr Laboratories,* 930 F.2d 72 (D.C. Cir. 1991) (holding that the mere fact that there is a statutory deadline does not guarantee that the court will award equitable relief).  These facts meet the standards for equitable tolling, because they amount to a situation where  the complainant has been induced or tricked by his adversary s misconduct into allowing the filing deadline to pass,  *Irwin*, 498 U.S. at 98, and where  the plaintiff despite all due diligence is unable to obtain vital information bearing on the existence of his claim.  *Chung*, 333 F.3d at 278-79.

EPA should not be rewarded for its deceptive practices.  If the Court finds that section

2401(a) applies here, it should rule that the deadline for filing was equitably tolled.[13]

## CONCLUSION

For the foregoing reasons, Plaintiffs complaint is not barred by the statute of limitations. Congress directed EPA to issue regulations intended to protect the public, and especially children, from a major health hazard. EPA misled the public into believing that those regulations were forthcoming for nearly a decade. The Court should not permit EPA to use that fact to evade this important public health responsibility altogether. The Motion to Dismiss should be denied.

Respectfully submitted,

/S/

Richard E. Condit, D.C. Bar #417786
General Counsel
Paula Dinerstein, D.C. Bar # 333971
Senior Counsel
Public Employees for Environmental Responsibility
2000 P St., N.W. Suite 240
Washington, D.C. 20036
Tel. 202-265-7337

Counsel for Plaintiffs

Dated: October 13, 2006

---

[13] EPA claims that Plaintiffs did not allege facts in their complaint to support the application of equitable tolling here. EPA Motion at 9. If the Court concludes that it may not consider the attached exhibits in support of equitable tolling, Plaintiffs request that the Court either convert EPA s motion into one for summary judgment in order to consider matters outside the pleadings, or grant leave to amend Plaintiff s complaint pursuant to Fed.R.Civ.P. 15(a).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
PUBLIC EMPLOYEES FOR                    )
ENVIRONMENTAL RESPONSIBILITY,           )
        et al.,                         )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              )          No. 05-cv-02437 (CKK)
                                        )
STEPHEN JOHNSON,                        )
Administrator, United States Environmental )
Protection Agency,                      )
                                        )
        Defendant.                      )
                                        )
_____)

**[PROPOSED] ORDER DENYING EPA S MOTION TO DISMISS**

Upon consideration of EPA s Motion to Dismiss Plaintiff s Complaint for Lack of Subject

Matter Jurisdiction, and Plaintiffs  Opposition thereto, the Court finds that EPA s Motion should

be denied.

It is this _____ day of _____, 2006, hereby

ORDERED, that EPA s Motion to Dismiss Plaintiff s Complaint for Lack of Subject

Matter Jurisdiction is hereby DENIED.


                            _____
                            Honorable Colleen Kollar-Kotelly
                            United States District Judge