IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 05-cv-02437 (CKK) |
| STEPHEN JOHNSON, Administrator, United States Environmental Protection Agency, | ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF
EPA'S MOTION TO DISMISS FOR LACK OF JURISDICTION**

EPA has moved the Court to dismiss PEER's citizen suit in this litigation based on

PEER's failure to file suit within six years of EPA's alleged failure to promulgate a rule under 15

U.S.C. § 2682(c)(3). EPA's Motion rests on the following foundations:

- 28 U.S.C. § 2401(a), the general six-year statute of limitations for suits against the United States, applies to this action.

- That statute of limitations states a limit on the Court's jurisdiction, because it defines the scope of Congress's waiver of sovereign immunity.

- In cases to compel performance of a governmental function, equitable doctrines will not apply to extend the statute of limitations.

- Even if the six-year period prescribed by § 2401 could be extended, PEER has not alleged facts supporting its extension here.

PEER's Opposition does nothing to undermine these arguments. PEER argues that it must

prevail under *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990), but because PEER has sued

to compel the promulgation of a regulation, *Irwin* and its progeny strongly support EPA's position that the statute of limitations is not subject to equitable tolling. PEER also tries to obscure the key issue by focusing on what EPA has allegedly failed to do, whereas the statute of limitations places in issue PEER's own conduct – namely, its failure to file its suit at any time during the six years after EPA's alleged violation of 15 U.S.C. § 2682(c)(3).

This Reply will review each principle supporting EPA's Motion and demonstrate why PEER's counterarguments to each (wherever they may be found in PEER's brief) are unavailing. Because the normal rules concerning statutes of limitations and sovereign immunity apply here, the Court does not have jurisdiction over PEER's Complaint and it must be dismissed.

## I.      The general six-year statute of limitations applies to PEER's action.

PEER's Opposition contains two fundamental errors about the applicability of 28 U.S.C. § 2401 to the citizen suit provision of the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2619. First, PEER argues that because TSCA contains a notice provision, which requires sixty days' notice to the Administrator before a citizen suit is filed, the general statute of limitations for actions against the United States does not apply. Opp. at 11. However, a notice provision is not a statute of limitations, and serves a different purpose. *See Brown v. United States*, 742 F.2d 1498, 1506 (D.C. Cir. 1984) ("a notice provision has a very different relationship to a cause of action than that of a statute of limitations, tolling provision, or survival rule"). Statutes that have a notice provision, where they do not contain a separate limitations period, are subject to a general statute of limitations. *See Enos v. Kaiser Indus.*, 443 F. Supp. 798, 801-02 (D.D.C. 1979) (holding that the failure to comply with the notice requirement of the Age Discrimination in Employment Act ("ADEA") was a reason for dismissal separate from the two-year statute of

limitations);[1] *Center for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006)

(applying § 2401 to a citizen suit under the Endangered Species Act, which contains a notice

provision at 16 U.S.C. § 1540(g)(2)); *Public Interest Research Group of New Jersey v. Powell

Duffryn Terminals, Inc.*, 913 F.2d 64, 76 (3d Cir. 1990) (applying the background statute of

limitations, 28 U.S.C. § 2462, to a citizen suit under the Clean Water Act, which contains a

notice provision at 33 U.S.C. § 1365(b)).

Second, PEER argues that because TSCA's citizen suit provision does not contain an

outer limit on the time to sue, "it must be assumed that an unlimited period was intended." Opp.

at 11. The Supreme Court has rejected this suggestion, stating that where the statute does not

expressly include a limitations period, "Congress intended to impose an appropriate period

borrowed either from a state statute or from an appropriate federal one." *Stevens v. Dep't of the

Treasury*, 500 U.S. 1, 7 (1991). Furthermore, the Court made this observation about a statute

that included a separate notice provision. *See id.* at 6-7. Here, the appropriate limitations

provision is 28 U.S.C. § 2401, which states that "every civil action against the United States shall

be barred unless the complaint is filed within six years after the right of action first accrues." In

this circuit, it is "beyond dispute that § 2401(a) applies to all civil actions." *Spannaus v. Dep't of

Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987).[2] As such, Congress's choice not to include a separate

_____

[1] The ADEA illustrates the distinct nature of notice provisions and statutes of limitations. In the
original version of that statute, the notice provision and the limitations provision were completely
separate. *Compare* 29 U.S.C. § 626(d) (notice provision) *with id.* § 626(e) (1967) (applying the
separate statute of limitations in 29 U.S.C. § 255). The statute has since been amended to
include a shorter limitations period in 29 U.S.C. § 626(e) that is still separate from the notice
provision.

[2] PEER does not cite any authority against *Spannaus* except to suggest that it is superseded by
*Irwin*. However, *Irwin* has no bearing on whether § 2401 applies in the first instance. Even after

-3-

limitations period in TSCA must be viewed as a decision to apply the background statute of

limitations for actions against the United States, rather than an implicit waiver of sovereign

immunity in perpetuity.  This conclusion is compelled by the very case PEER cites, *Northwest*

*Bank Minnesota Nat'l Ass'n v. FDIC*, 312 F.3d 447, 451 (D.C. Cir. 2002).  In that case, the court

reasoned that by including a specific statute of limitations, Congress intended to supersede

§ 2401(a), which would ordinarily apply as the "general, catchall provision."  *Id.*

      According to PEER, the application of § 2401 to its citizen suit is also contrary to the

intent of Congress because it would conflict with the purpose of citizen suit provisions.

However, its citation to *Bennett v. Spear*, 520 U.S. 154 (1997), is unavailing.  Although TSCA's

citizen suit provision permits suit by "any person," 15 U.S.C. § 2619(a), that does not mean that

Congress intended such a broad class to be able to sue forever.  Indeed, the broad standing

available under TSCA only highlights the fact that for nine years, no one in the United States

sued to compel rulemaking under 15 U.S.C. § 2682(c)(3).  It also makes no difference that

another purpose of the statute of limitations, preventing the erosion of evidence over time, is not

implicated here.  Congress often imposes limitations periods far shorter than six years, and they

are enforced even though erosion of evidence is presumably not a concern.  *See, e.g., Price v.*

*Greenspan*, 374 F. Supp. 2d 177, 185 (D.D.C. 2006) (holding that claims of retaliation under the

ADEA were barred under that Act's 90-day statute of limitations).  Although some plaintiffs who

have failed to preserve their rights no doubt feel wronged by applicable statutes of limitations,

"the entire purpose of statutes of limitations is to provide finitude to liability for wrongs."  *Beale*

---

*Irwin*, the D.C. Circuit has continued to cite *Spannaus* for the proposition that § 2401 applies to
"all civil actions."  *See, e.g., Kendall v. Army Bd. for Correction of Military Records*, 996 F.2d
362, 365 (1993).

*v. District of Columbia*, 789 F. Supp. 1172, 1176 (D.D.C. 1992). In a situation such as this, the

statute of limitations "operate[s] to define the point of repose, after which expectations become

settled." *Brown*, 742 F.2d at 1506.

Finally, PEER argues that the D.C. Circuit and the Southern District of New York have

refused to apply § 2401 to claims alleging nonperformance of a mandatory duty.

Notwithstanding PEER's reliance on *Wilderness Society v. Norton*, 434 F.3d 584 (D.C. Cir.

2006), that case does not contradict the basic argument that EPA presented in its Motion. The

court of appeals explicitly pointed out that its discussion of the statute of limitations issue was

*dicta. Wilderness Society*, 434 F.3d at 588, 589. PEER's contention that *Wilderness Society*

"carefully analyzed" the issue currently before the Court, Opp. at 14, disregards the lack of any

discussion of sovereign immunity, the Court's own qualifying language, and the one-sided

briefing of the issue in the court of appeals. *See* EPA Mot. at 14. PEER is correct that the D.C.

Circuit cited the actual holdings of other cases. See *Wilderness Society*, 434 F.3d at 588-89

(citing *In re Bluewater Network*, 234 F.3d 1305 (D.C. Cir. 2000); *In re United Mine Workers*,

190 F.3d 545 (D.C. Cir. 1999)). But as EPA has demonstrated, those cases addressed the distinct

issue of whether new challenges to agency inaction should have been included with challenges to

a prior rule. *See* EPA Mot. at 17-19. Accordingly, neither of those cases supports PEER's claim.

PEER also cites the non-binding decision in *Natural Resources Defense Council v. Fox*,

909 F. Supp. 153, 159 (S.D.N.Y. 1995), to suggest that applying a statute of limitations to its

claim would "repeal the mandatory duties" of 15 U.S.C. § 2682(c)(3). *Fox*'s reasoning on the

question of the statute of limitations is not reliable. EPA's Motion does not raise the issue of

whether EPA still has a duty to issue regulations under § 2682(c)(3); it raises only the question

whether PEER may bring suit against EPA under the citizen suit provision, 15 U.S.C. § 2619.

On this question, it is clear that the statute of limitations applies to PEER's claim as it would

apply to "all civil actions." *Spannaus*, 824 F.2d at 55. This is not a *de facto* repeal of EPA's

duty to promulgate regulations under 15 U.S.C. § 2682(c)(3): Any person, including PEER,

could assert that EPA still has such a duty in a petition for rulemaking under the Administrative

Procedure Act, 5 U.S.C. § 553(e). If EPA were to deny such a petition, PEER could challenge

that denial as "arbitrary, capricious . . . or otherwise not in accordance with law." 5 U.S.C. §

706(2)(A). *Cf. Center for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1336 (11th Cir.

2006). Moreover, if Congress decides that additional action is necessary, then it has other tools

available, including its oversight authority, its appropriations power, and its ability to extend the

time period for citizen suits.

     The district court's decision in *Fox* is also not persuasive authority in this case because it

disregards the sovereign immunity analysis that is a foundation for suits against the United

States. *See infra* p. 7. The *Fox* court reasoned that Congress intends for statutory duties, such as

those expressed in the Clean Water Act, to be enforceable. 909 F. Supp. at 159. However,

Congress legislates against the background of limitations provisions, and those provisions also

express a legislative intent. *See Irwin*, 498 U.S. at 95. Under the faulty reasoning of *Fox*, courts

could selectively disregard statutes of limitation wherever they would extinguish the right to

enforce a legal duty – a potentially wide class of cases.[3/]

---

[3/] In addition, *Fox* is distinguishable on its facts: Under the statute at issue there, EPA's duties
arose "from time to time," including within the limitations period. *Fox*, 909 F. Supp. at 159-60.
Here, in contrast, TSCA imposes a duty that arises at a fixed point in time, i.e., October 28, 1996.
*See* 15 U.S.C. § 2682(c)(3).

The interpretation of citizen suit provisions that PEER advances would allow agencies to be sued for omissions that occurred in 1996, in 1976, in 1956, or even earlier. This is contrary to the command in § 2401 that claims against the United States "shall be barred unless the complaint is filed within six years," and it cannot be "a realistic assessment of legislative intent." *Irwin*, 498 U.S. at 95.

## II.    Section 2401 limits this Court's jurisdiction over this cause of action because it limits the United States' waiver of sovereign immunity.

Attacking the second foundation of EPA's argument, PEER argues that "the Supreme Court has expressly rejected the proposition that time limitations with respect to suits against the United States are jurisdictional." Opp. at 4. This is only true in the sense that, after *Irwin*, time limits need not be strictly construed in every case. However, time limitations are still jurisdictional in the sense that matters to this motion: A statute of limitations for suits against the United States defines the scope of Congress's waiver of sovereign immunity, and such a waiver is a condition of the Court's jurisdiction. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). PEER's position that the statute of limitations is not "jurisdictional" depends on the imprecision in the federal courts' use of that term. As the Supreme Court has noted, "'jurisdiction' . . . is a word of many, too many, meanings." *Arbaugh v. Y&H Corp.*, 126 S. Ct. 1235, 1242 (2006). *See also Scarborough v. Principi*, 541 U.S. 401, 413 (2004); *Trudeau v. FTC*, 456 F.3d 178, 184 (D.C. Cir. 2006) (each cautioning that courts casually use and misuse the word "jurisdictional" in many different ways). The Court can avoid any such confusion here by concentrating on the specific sovereign immunity question raised in EPA's Motion.

The Supreme Court was explicit in *Irwin* that the key issue in that case was the scope of a

waiver of sovereign immunity. *See* 498 U.S. at 94. The central holding of *Irwin*, that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States," was a direct result of the Court's conclusion that this would "amount to little, if any, broadening of the congressional waiver." *Id.* at 95-96. As the Court subsequently phrased the question, in creating a statute of limitations, "[i]s there good reason to believe that Congress did *not* want the equitable tolling doctrine to apply?" *United States v. Brockamp*, 519 U.S. 347, 350 (1997). PEER's argument that statutory time limits are unrelated to the sovereign's consent to be sued, *see* Opp. at 4, cannot be reconciled with this connection to Congress's intent to waive sovereign immunity. The statute of limitations is *always* a limit on the Court's jurisdiction in cases against the United States.

In *Irwin*, the Court determined that this limit does not have to be construed narrowly in every case; it permitted doctrines such as equitable tolling to be applied if they would apply in private litigation. *Id.* at 95-96. This holding was a departure from the normal rule that limits on the Court's jurisdiction must be strictly construed, and in that sense, the statute of limitations was not treated the same way as other jurisdictional limits. *See Chung v. Dep't of Justice*, 333 F.3d 273, 276 (D.C. Cir. 2003) (describing a time limit as "jurisdictional" if it is "not subject to judicial malleation").

However, § 2401 is still jurisdictional in the sense that it defines the scope of Congress's waiver of sovereign immunity and thus, indirectly, the limits of the Court's jurisdiction. *See id.* (noting that the Court's reasoning in *Irwin* concerned the waiver of sovereign immunity); *Felter v. Norton*, 412 F. Supp. 2d 118, 122-23 (D.D.C. 2006) (explaining the connection between the

*Irwin* presumption, sovereign immunity, and jurisdiction).[4]  If the period for which Congress

waived the United States' sovereign immunity has closed, then PEER's Complaint is untimely,

and the Court has no jurisdiction over PEER's late-filed claim.  *See Center for Biological*

*Diversity*, 453 F.3d at 1334; *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1355

(Fed. Cir. 2006) (the statute of limitations "is a jurisdictional requirement attached by Congress

as a condition of the government's waiver of sovereign immunity.").

    The other authorities that PEER cites do not undermine this analysis.  *Arbaugh,* 126 S.

Ct. at 1242-43, and *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004), both dealt with cases against

private parties and did not have occasion to analyze sovereign immunity.  These cases also

involved "claim-processing rules" that are "procedural requirements," and not limits on the

court's jurisdiction.  *John R. Sand & Gravel*, 457 F.3d at 1354-55.  Thus, the Court in

*Scarborough v. Principi*, 541 U.S. at 413-14 (2004), held that the courts had jurisdiction over an

attorney fee claim without reference to the statute of limitations because it was "ancillary to the

judgment of a court that has plenary jurisdiction" of the underlying civil action.  However, the

Court went on to analyze the fee provision's application *against the United States* in light of the

congressional waiver of sovereign immunity.  *See Scarborough*, 541 U.S. at 421-22; *see infra* pp.

10-11.  Time limits may not limit the Court's jurisdiction to decide a related federal question

between private parties, but in actions against the United States, the Court must assess a statute

of limitations with respect to the waiver of sovereign immunity that is necessary for jurisdiction.

---

[4] To the extent the Ninth Circuit case law that PEER cites on this issue may hold that statutes of limitations are not "jurisdictional" in that they do not implicate a waiver of sovereign immunity, *see Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 n.2 (9th Cir. 1995), that case law is contradicted by the D.C. Circuit's directly controlling precedent in *Chung*.

*See Irwin*, 498 U.S. at 95-96; *Chung*, 333 F.3d at 276-77; *Felter*, 412 F. Supp. 2d at 122-24;

*John R. Sand & Gravel*, 457 F.3d at 1355; *Center for Biological Diversity*, 453 F.3d at 1335.

### III.    Equitable tolling cannot expand the waiver of sovereign immunity in this case to compel the performance of a purely governmental function.

The Court may consider whether equitable doctrines apply to increase PEER's time to sue only if the "broadening of the congressional waiver" that the Court recognized in *Irwin* extends to PEER's claim. *Irwin*, 498 U.S. at 95. In arguing that it does, PEER completely ignores the Supreme Court's own statement on this subject: Equitable doctrines may apply to claims against the sovereign only if they would be "applicable to suits against private defendants." *Id.* at 96. The Court noted that sovereign immunity could be waived to "mak[e] the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits." *Id.* at 95. The Court did *not* hold in *Irwin* that equitable tolling would be available in suits to compel the performance of purely governmental functions.

In this district, the Supreme Court's proviso concerning "private suits" is explained and applied in *Chung v. Dep't of Justice* and in *Felter v. Norton*. Both of those decisions confirmed that the equitable tolling may apply only to cases "in which the injury to be redressed is of a type familiar to private litigation." *Chung*, 333 F.3d at 277; *Felter*, 412 F. Supp. 2d at 123. PEER says that *Chung* is wrongly decided because this concentration on the type of claim asserted is "inconsistent with *Irwin*'s broad rule." Opp. at 21. But the Supreme Court itself noted this limit in *Irwin*, and *Chung* merely gives content to that limit. PEER's statement that "there is no meaningful distinction" between private parties and the government for purposes of equitable tolling, Opp. at 21, is simply not the law in this circuit.

-10-

Indeed, in *Scarborough v. Principi*, 541 U.S. 401 (2004), the Supreme Court essentially approved of the reasoning in *Chung*. Echoing the concentration on sovereign immunity in *Irwin*, the Court allowed an action against the United States for attorneys' fees to be filed outside the time period specified in the statutory fees provision, reasoning that the fee statute "resembles 'prevailing party' fee-shifting statutes that are applicable to suits between private litigants." 541 U.S. at 422. *Scarborough* did suggest that equitable tolling may be available in claims that did not have a "precise" private analogue. *Scarborough,* 541 U.S. at 422; *see* Opp. at 21. The same could be said of *Chung*: In both cases, the underlying statutes did not create a cause of action against private parties. But these cases do not go far enough to help PEER, because each of them relaxed the relevant time requirements only where there was an "injury to be redressed" that was "familiar to private litigation." *Chung*, 333 F.3d at 277. In *Scarborough* that private-litigation analogue was a claim for attorney fees, and in *Chung* it was a claim for "damages caused by . . . unwarranted disclosure of personal information." *Id.* These cases did not hold that equitable tolling could apply in the absence of any private analogue.

The distinction that the D.C. Circuit has recognized and that the Supreme Court has approved is fatal to PEER's claim. There is no analogous private cause of action to PEER's case against the government, and PEER does not even attempt to draw such an analogy. Promulgation of a regulation is a purely governmental function that a private party may not perform. *See Chung*, 333 F.3d at 277 ("A petition for review of an informal agency rulemaking would not likely meet the [*Irwin*] test"). The waiver of sovereign immunity in § 2401 therefore cannot be broadened in time by the *Irwin* analysis. Since the waiver of sovereign immunity for PEER's claim has been extinguished by the passage of time, this Court is without jurisdiction to

-11-

hear it.

The cases that PEER cites to support the idea that equitable tolling is available in this case to compel the promulgation of a regulation are not applicable. In *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 558-559 (1974), the original defendant was a private party, and so the Court did not consider the jurisdictional issue of a waiver of sovereign immunity. Also, that case determined whether equitable tolling of the limitations period was "consonant with the legislative scheme," *id.* at 558, the very same question that the D.C. Circuit answered in the negative in *Chung*. Similarly, the Court did not consider the statute of limitations in the context of an action against the United States in *Holmberg v. Armbrecht*, 327 U.S. 392 (1974), or *Zipes v. Trans World Airlines*, 455 U.S. 385 (1982), and the same is true of the Seventh Circuit in *Leavell v. Kieffer*, 189 F.3d 492 (7th Cir. 1999). None of these cases hold or suggest that equitable tolling or similar doctrines are available in an action against the United States to compel performance of a governmental function. In any case, the Court in *Irwin* explicitly superseded its inconsistent prior statements on that question. *Irwin*, 498 U.S. at 95.

Finally, PEER argues that the statute of limitations may be extended in this action for a separate reason, i.e., because the statute is tolled "until the time a particular plaintiff is adversely affected by the regulations." Opp. at 7. PEER asserts that this is an exception to statutes of limitation, but that is not correct. The cases that PEER cites considered when a plaintiff's claim accrues, a different question from whether a statute of limitations applies. *See Dunn-McCampbell Royalty Interest, Inc. v. National Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997) (noting that "the failure to sue the United States within the limitations period . . . operates to deprive federal courts of jurisdiction," but that "an application of a rule to a party" creates a new

-12-

cause of action for that party); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 714 (9th Cir. 1991) (addressing the question of "when Wind River's right of action first accrued"). Here, it is indisputable that PEER's claim under 15 U.S.C. § 2619 accrued at the statutory deadline in 1996, and the statute of limitations began to run at that time.[5]

**IV.    Even if the waiver of sovereign immunity could be expanded by equitable doctrines, PEER has not alleged facts supporting such doctrines.**

The foregoing discussion demonstrates that EPA's Motion, predicated on the sovereign immunity of the United States, is properly a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). If, however, the Court finds that it is not required to dismiss PEER's complaint for the reasons discussed above, then EPA agrees that the Court may decide the merits of EPA's timeliness defense in the context of this Motion, and also that the Court may take judicial notice of EPA's published notices in the Federal Register.[6] In determining whether PEER's Complaint alleges facts to support the application of equitable tolling, therefore, the proper standard is that of a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Here, the allegations of the Complaint, on their face,

---

[5] PEER also suggests that the statute of limitations has not run because its claim only accrued at the time of "final agency action." Opp. at 16 (*citing Harris v. FAA*, 353 F.3d 1006, 1009 (D.C. Cir. 2004)). That would be true only if PEER's Complaint had challenged a final agency action. Instead, PEER's Complaint is brought under § 2619, which specifically permits citizen challenges to EPA's failure to perform a nondiscretionary duty set forth in TSCA. Accordingly, there is no "final agency action" issue in this case.

[6] PEER did not mention in its Complaint the additional Federal Register notices that it cites in its Opposition. It also did not in its Complaint raise the argument that it now uses, Opp. at 22, that it was "induced or tricked" into not filing suit by EPA's statements during the limitations period. These omissions would be enough to reject PEER's claim of equitable tolling. However, assuming that PEER were to amend its Complaint to include these allegations, its arguments in favor of equitable tolling must still fail for the reasons outlined in this section.

demonstrate that a statute of limitations defense applies, because they allege an omission that occurred in 1996, and PEER could have brought its action to the Court at that time. *See* EPA Mot. at 5-7.

Even if the statute of limitations were susceptible to equitable tolling here, PEER has not alleged facts to support equitable tolling. PEER argues (in its Opposition, though not in its Complaint) that it was "induced" and "tricked" into withholding its Complaint through "deceptive practices." Opp. at 22. This professed victimhood is merely a futile attempt to draw the Court's attention away from the fact that PEER knew *every fact* that it needed to know to allege its cause of action on October 29, 1996, the day after the deadline specified in 15 U.S.C. § 2682(c)(3). PEER cannot possibly have been misled about whether EPA had promulgated a regulation by the statutory deadline. *Chung*, which PEER cites in support of its equitable tolling argument, states that equitable tolling "applies most commonly when the plaintiff despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim." 333 F.3d at 278 (internal quotations omitted). All the information bearing on the existence and viability of PEER's claim was available by reference to the Federal Register on the day after the deadline. The Court need not and should not permit late filing here, "where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96.

Aside from PEER's lack of due diligence, the fact that EPA has not yet taken final action on some of the items included on the federal government's massive unified regulatory agendas does not demonstrate trickery or deception on EPA's part. The kind of actions that have been held to toll statutes of limitations have not been statements of intent, but rather false statements,

-14-

material mistakes about applicable deadlines, or concealment.[7]  This Court has described

equitable tolling as appropriate where "extraordinary circumstances . . . beyond the control of the

complainant . . . *make it impossible* to file a complaint within the statute of limitations."  *Felter*,

412 F. Supp. 2d at 126 (emphasis added).  Even where government conduct "'lulled' a

complainant into inaction," *see id.* – a hypothetical that did not occur here[8] – equitable tolling

has been denied in the absence of "unethical or outrageous behavior."  *United States v. Pollard*,

416 F.3d 48, 56 (D.C. Cir. 2005), *cert. denied*, 126 S. Ct. 1590 (2006).

     PEER's unsubstantiated allegations that EPA intended its regulatory agenda notices to

deceive the public are not sufficient to overcome the "presumption of regularity" that applies to

agency actions.  *Morris v. Sullivan*, 897 F.2d 553, 560 (D.C. Cir. 1990).  To the contrary, the

Federal Register notices that PEER cites demonstrate that EPA was candid with the public about

its progress toward a final rule under § 2682(c)(3).  PEER could have determined from EPA's

Unified Regulatory Agenda notices that EPA intended to propose a rule under § 2682(c)(3) – as

indeed it has done – but that the target dates in the Regulatory Agenda were not written in stone.

As the following table demonstrates, EPA not only informed the public that its rulemaking would

extend beyond the statutory deadline of October 28, 1996, but also that it would not complete a

rule within the six-year limitations period for enforcing that deadline:

_____

[7]*See, e.g., Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231, 235 (1959) (allowing
equitable tolling where defendant misrepresented to plaintiff the time permitted to bring a claim);
*Holmberg*, 327 U.S. at 393, 395 (allowing equitable tolling where defendant had previously
concealed his identity as a stockholder).

[8]PEER never alleges, even in its Opposition, that it would have filed suit within six years of
October 28, 1996, but for these Federal Register notices.

| DATE OF NOTICE | PROJECTED DATE OF FINAL RULE | CITATION |
|---|---|---|
| November 14, 1994 | October 1996 | 59 Fed. Reg. 58,200, 58,232 |
| November 28, 1995 | October 1997 | 60 Fed. Reg. 60,602, 60,634 |
| November 29, 1996 | December 1998 | 61 Fed. Reg. 62,005, 62,148 |
| October 29, 1997 | December 1999 | 62 Fed. Reg. 57,003, 57,151 |
| November 9, 1998 | September 2001 | 63 Fed. Reg. 61,205, 61,355 |
| November 22, 1999 | August 2001 | 64 Fed. Reg. 65,010, 65,108 |
| November 30, 2000 | February 2003 | 65 Fed. Reg. 73,303, 74,579 |
| December 3, 2001 | August 2003 | 66 Fed. Reg. 61,125, 61,278 |

Each of these entries in the regulatory agenda appeared before PEER's time to file its claim expired. The November 2000 notice is particularly revealing because it was issued before the expiration of the six-year limitations period, but indicated that EPA would not promulgate a final regulation during the limitations period. PEER therefore should have known to preserve its legal rights, *see Irwin*, 498 U.S. at 96, by filing its cause of action prior to October 28, 2002.[9]

Finally, PEER argues that the statute of limitations does not bar its claim because PEER has alleged a continuing violation. *See* Opp. at 7, 15, 18. To the contrary, PEER has alleged a discrete violation that occurred at the statutory deadline. PEER's argument that "there is nothing that ties [EPA's] duty to a particular point in time," Opp. at 18, is flatly contradicted by the plain language of the very sentence creating that duty. *See* 15 U.S.C. § 2682(c)(3) (requiring action "[w]ithin four years after October 28, 1992"). The D.C. Circuit has confirmed that where a

---

[9] Even after the lapse of the limitations period, EPA has continued to include entries in its published regulatory agenda concerning rulemaking pursuant to 15 U.S.C. § 2682(c)(3).

statute makes a deadline part of a government agency's nondiscretionary duty, and makes that

deadline enforceable through a citizen suit, the duty is a "duty of timeliness" and the question for

the Court is whether the "agency failed to comply with that deadline." *See Sierra Club v.*

*Thomas*, 828 F.2d 783, 789-91 (D.C. Cir. 1987). The continuing violations doctrine does not

apply to such a duty. Under that doctrine, the Court may consider acts that occurred within the

limitations period, even if those acts are part of a series of violations that began outside the

limitations period. *See, e.g., Felter*, 412 F. Supp. 2d at 125. However, discrete acts and

omissions that occurred outside the limitations period are still not actionable. *See National R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002); *Shea v. Rice*, 409 F.3d 448, 451 (D.C.

Cir. 2005); *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997). Here, EPA cannot have

violated 15 U.S.C. § 2682(c)(3) within the limitations period (in this case, the last six years),

because that section did not create a duty arising within the last six years.

PEER's attempt to distinguish *Center for Biological Diversity v. Hamilton* based on the

language of the statutes at issue is unpersuasive. In holding that the Fish and Wildlife Service

had violated its duty of timeliness at "a fixed point in time," the Eleventh Circuit relied on the

language in the Endangered Species Act requiring action "not later than" the close of a one-year

period. 453 F.3d at 1335. That language is not materially different from TSCA's deadline

"within four years after" a fixed date, and the same reasoning should apply in this case. Also,

*Center for Biological Diversity* treated the question of continuing violations in some depth, tied

it to the necessary sovereign immunity analysis, and is consistent with the D.C. Circuit definition

of a continuing violation. *See* 453 F.3d at 1334-36.

PEER also cites the district court decisions in *Southern Appalachian Biodiversity Project*

-17-

*v. Fish & Wildlife Serv.*, 181 F. Supp. 2d 883, 887 (E.D. Tenn. 2001), and *American Canoe Ass'n v. EPA*, 30 F. Supp. 2d 908, 925-26 (E.D. Va. 1998), both of which are in tension with the Eleventh Circuit decision. These decisions suffer from some of the same fallacies as PEER's arguments, and they are unreliable as persuasive authority for this Court. Like *NRDC v. Fox*, they discuss claims against the United States without any mention of the foundational sovereign immunity analysis. The court in *Southern Appalachian*, also like the court in *Fox*, divined Congress's intent only from the statute that created the agency's duty, disregarding the background statements of legislative intent that are enacted as the controlling statutes of limitation. *Southern Appalachian*, 181 F. Supp. 2d at 887. The *Southern Appalachian* court also incorrectly described the statute of limitations as an unwarranted "exception" to the Endangered Species Act, rather than as a coordinate rule governing the time for a plaintiff to bring suit. *Id.*[10] *American Canoe Association* is also distinguishable because it addressed a claim of unreasonable delay under the Administrative Procedure Act, which is substantively different from the citizen suit claim that PEER has raised, and did not actually hold that a continuing violation existed. *See American Canoe Ass'n*, 30 F. Supp. 2d at 925; EPA Mot. at 15-17. Finally, in each case the court concluded that the plaintiff had alleged a continuing violation without analyzing what a continuing violation is or citing any cases defining or discussing that concept. In assessing these cases from other courts, therefore, this Court should find more persuasive value in the Eleventh Circuit's decision than in the decisions of the two district courts.

* * *

------

[10] As PEER recognizes, *see* Opp. at 18 n. 11, if *Center for Biological Diversity* is distinguishable from the present case, then PEER must also forgo reliance on *Southern Appalachian*, which construed the same statute.

According to PEER, it would be an "anomaly" for PEER to have been able to sue in 1996, but be barred from suit in 2006. Opp. at 18. To the contrary, that is the normal operation of a statute of limitations – the more anomalous result would be if there were no statute of limitations and PEER could sue forever. PEER's Complaint under 15 U.S.C. § 2619 could have been filed by "any person" starting one day after the statutory deadline, and under 28 U.S.C. § 2401 the window to sue was open for six years. When that window closed in 2002 – without a word from PEER or any of the other plaintiffs in this case – the United States' waiver of sovereign immunity ended, and this Court no longer had jurisdiction over PEER's claim.

## CONCLUSION

For the foregoing reasons, EPA respectfully renews its request that its Motion be granted, and that the Court dismiss PEER's complaint with prejudice.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

DAVID GUNTER
Environmental Defense Section
United States Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3896
(202) 514-3785

*Attorneys for United States Environmental Protection
Agency*

Dated: October 26, 2006

-19-